751 So.2d 37 (1999)
Thomas H. PROVENZANO, Appellant,
v.
STATE of Florida, Appellee.
No. 95,959.
Supreme Court of Florida.
August 26, 1999.
Michael P. Reiter, Chief Assistant CCRC, and Mark Gruber, Staff Attorney, Capital Collateral Regional CounselMiddle, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Carolyn M. Snurkowski, Assistant Attorney General, Tallahassee, Florida, and Carol M. Dittmar and Katherine V. Blanco, Assistant Attorneys General, Tampa, Florida, for Appellee.
PER CURIAM.
Thomas H. Provenzano, at a time when he was under warrant of death, appealed the circuit court's denial of his motion pursuant to Florida Rule of Criminal Procedure 3.811, wherein Provenzano claimed that he was not competent to be executed. In order to give this matter full consideration, this Court entered a stay of execution on July 8, 1999.[1] We further ordered the parties to submit briefs discussing what constitutes "reasonable grounds" under rule 3.811(e) so as to require a hearing pursuant to Florida Rule of Criminal Procedure 3.812.[2] We have jurisdiction pursuant to article V, sections 3(b)(1) and (9) of the Florida Constitution. For the reasons explained below, we remand this cause for a hearing pursuant to rule 3.812.
A brief background of the facts in this case is necessary to analyze this issue. Provenzano's execution was originally set for Wednesday, July 7, 1999. On Monday, July 5, 1999, Provenzano submitted filings with the Governor claiming that Provenzano was insane to be executed, pursuant to section 922.07, Florida Statutes (1997). Section 922.07 states:
Proceedings when person under sentence of death appears to be insane.
(1) When the Governor is informed that a person under sentence of death may be insane, the Governor shall stay execution of the sentence and appoint a commission of three psychiatrists to examine the convicted person. The Governor shall notify the psychiatrists in writing that they are to examine the *38 convicted person to determine whether he or she understands the nature and effect of the death penalty and why it is to be imposed upon him or her. The examination of the convicted person shall take place with all three psychiatrists present at the same time. Counsel for the convicted person and the state attorney may be present at the examination. If the convicted person does not have counsel, the court that imposed the sentence shall appoint counsel to represent him or her.
(2) After receiving the report of the commission, if the Governor decides that the convicted person has the mental capacity to understand the nature of the death penalty and the reasons why it was imposed upon him or her, the Governor shall immediately lift the stay and notify the Attorney General of such action. Within 10 days after such notification, the Governor must set the new date for execution of the death sentence. When the new date for execution of the death sentence is set by the Governor under this subsection, the Attorney General shall notify the inmate's counsel of record of the date and time of execution.
(3) If the Governor decides that the convicted person does not have the mental capacity to understand the nature of the death penalty and why it was imposed on him or her, the Governor shall have the convicted person committed to a Department of Corrections mental health treatment facility.
(4) When a person under sentence of death has been committed to a Department of Corrections mental health treatment facility, he or she shall be kept there until the facility administrator determines that he or she has been restored to sanity. The facility administrator shall notify the Governor of his or her determination, and the Governor shall appoint another commission to proceed as provided in subsection (1).
(5) The Governor shall allow reasonable fees to psychiatrists appointed under the provisions of this section which shall be paid by the state.
As required by the statute, the Governor stayed the execution on Tuesday, July 6, 1999 (the day before the execution was to take place) and appointed a commission of three psychiatrists to examine Provenzano. After receiving the report of the commission, the Governor determined that Provenzano had the mental capacity to understand the nature of the death penalty and the reasons why it was imposed upon him. The Governor lifted the stay and reset the execution for Wednesday, July 7, 1999. Subsequently, Provenzano filed a motion in the circuit court pursuant to rule 3.811.
Rule 3.811 was created in response to the United States Supreme Court's decision in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). In Ford, the Supreme Court held that a prisoner has a constitutional right not to be executed while insane. A plurality of the Supreme Court also concluded that a prisoner under sentence of death is entitled to a judicial review of a governor's decision that the prisoner is competent to be executed. Rule 3.811 states:
Insanity at Time of Execution: Capital Cases
(a) Insanity to Be Executed. A person under sentence of death shall not be executed while insane to be executed.
(b) Insanity Defined. A person under sentence of death is insane for purposes of execution if the person lacks the mental capacity to understand the fact of the impending execution and the reason for it.
(c) Stay of Execution. No motion for a stay of execution pending hearing, based on grounds of the prisoner's insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida Statutes.

*39 (d) Motion for Stay after Governor's Determination of Sanity to Be Executed. On determination of the Governor of Florida, subsequent to the signing of a death warrant for a prisoner under sentence of death and pursuant to the applicable Florida Statutes relating to insanity at time of execution, that the prisoner is sane to be executed, counsel for the prisoner may move for a stay of execution and a hearing based on the prisoner's insanity to be executed.
(1) The motion shall be filed in the circuit court of the circuit in which the execution is to take place and shall be heard by one of the judges of that circuit or such other judge as shall be assigned by the chief justice of the supreme court to hear the motion. The state attorney of the circuit shall represent the State of Florida in any proceedings held on the motion.
(2) The motion shall be in writing and shall contain a certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the prisoner is insane to be executed.
(3) Counsel for the prisoner shall file, along with the motion, all reports of experts that were submitted to the governor pursuant to the statutory procedure for executive determination of sanity to be executed. If any of the evidence is not available to counsel for the prisoner, counsel shall attach to the motion an affidavit so stating, with an explanation of why the evidence is unavailable.
(4) Counsel for the prisoner and the state may submit such other evidentiary material and written submissions including reports of experts on behalf of the prisoner as shall be relevant to determination of the issue.
(5) A copy of the motion and all supporting documents shall be served on the Florida Department of Legal Affairs and the state attorney of the circuit in which the motion has been filed.
(e) Order Granting. If the circuit judge, upon review of the motion and submissions, has reasonable grounds to believe that the prisoner is insane to be executed, the judge shall grant a stay of execution and may order further proceedings which may include a hearing pursuant to rule 3.812.
Provenzano's 3.811 motion included two reports from Dr. Patricia Fleming, a clinical psychologist, wherein she concluded, "It is my professional judgment that Mr. Provenzano is not competent to be executed." The submissions also included sworn affidavits from a practicing Florida attorney and other Death Row inmates detailing Provenzano's bizarre behavior. In order to give the circuit court time to consider the motion, this Court stayed Provenzano's execution until Friday, July 9, 1999. On Wednesday, July 7, 1999, the circuit court denied Provenzano's motion without a rule 3.812 hearing. Provenzano appealed the denial to this Court, claiming that the motion and submissions were sufficient to constitute "reasonable grounds" to believe that he was insane to be executed, thereby requiring a hearing pursuant to Florida Rule of Criminal Procedure 3.812.[3]See Fla. R.Crim. P. *40 3.811(e). As stated above, this Court granted a stay of execution on Thursday, July 8, 1999, and directed the parties to submit briefs concerning the threshold requirement of "reasonable grounds" as used in rule 3.811(e).
We recognize that the application of the "reasonable grounds" standard articulated in rule 3.811(e) has caused some confusion. Since rule 3.811 went into effect in 1986, see In re Emergency Amendment to Florida Rules of Criminal Procedure (Rule 3.811, Competency to be Executed), 497 So.2d 643 (Fla.1986), only two defendants other than Provenzano have invoked the rule. See Medina v. State, 690 So.2d 1241 (Fla.1997); Martin v. State, 515 So.2d 189 (Fla.1987). Although both of these defendants eventually received hearings, see Medina, 690 So.2d at 1249; Martin v. Dugger, 686 F.Supp. 1523, 1542 (S.D.Fla. 1988), we understand that this Court has offered little guidance to the circuit courts in regards to applying the rule.
However, we find that the evidence presented by Provenzano, which consisted of an expert report and other corroborating evidence of Provenzano's bizarre behavior, when taken alone, establishes reasonable grounds to believe that Provenzano is incompetent to be executed. The evidence presented by the State, which also included expert reports, created questions of fact on this issue. And these factual disputes should be examined and resolved in the crucible of an adversarial proceeding. Therefore, under the circumstances of this case,[4] we remand for a hearing pursuant to rule 3.812. We decline to address Provenzano's claim that rule 3.811 and rule 3.812 are unconstitutional, as this claim is rendered moot by this Court's remand for a rule 3.812 hearing.
Finally, we are concerned that rule 3.811 does not contain a timetable for filings. As pointed out in the factual background above, Provenzano did not allege that he was insane to be executed until the week of his scheduled execution. Of course, rule 3.811 only comes into play after a defendant has made sufficient allegations of insanity to the Governor, pursuant to section 922.07, Florida Statutes (1997). In order to prevent the type of last-minute filing that we encountered in this case, we urge the Legislature to consider establishing a timetable as to when a claim must be filed under section 922.07 in those cases where there is knowledge that such a claim exists.[5]
Accordingly, for the reasons expressed in this opinion, we remand this case for a hearing pursuant to rule 3.812. No motion for rehearing will be permitted.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
HARDING, C.J., concurs with an opinion, in which PARIENTE and LEWIS, JJ., concur.
WELLS, J., dissents with an opinion.
*41 HARDING, C.J., concurring.
I concur with the majority opinion that Provenzano is entitled to hearing pursuant to Florida Rule of Criminal Procedure 3.812. I write separately to explain two points of disagreement that I have with the dissenting opinion. First, I question why the dissent recounted the procedural history of Provenzano's competence back to 1984. This historical backdrop has no relevance regarding whether Provenzano is incompetent to be executed at the present time.
Second, I disagree with the dissent's conclusion that the majority "has now taken the rule 3.811 decision away from the circuit court and placed it with a mental health expert chosen by the prisoner." Dissenting op. at 46 (Wells, J., dissenting). The majority opinion acknowledges that the "reasonable grounds" standard found in Florida Rule of Criminal Procedure 3.811(e) has caused some confusion. I read the majority opinion as providing guidelines to the circuit courts when faced with the decision as to whether a rule 3.812 hearing should be conducted. The majority opinion concludes that questions of fact on the issue of a defendant's sanity should be "examined and resolved in the crucible of an adversarial proceeding." Majority op. at 40. This procedure is in keeping with the Supreme Court's opinion in Ford v. Wainwright, 477 U.S. 399, 415, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), wherein Justice Marshall, writing for a plurality of the Court, stated:
A related flaw in the Florida procedure is the denial of any opportunity to challenge or impeach the state-appointed psychiatrists' opinions. "[C]ross-examination... is beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 J. Wigmore, Evidence § 1367 (J. Chadbourn rev. 1974). Cross-examination of the psychiatrists, or perhaps a less formal equivalent, would contribute markedly to the process of seeking truth in sanity disputes by bringing to light the bases for each expert's beliefs, the precise factors underlying those beliefs, any history of error or caprice of the examiner, any personal bias with respect to the issue of capital punishment, the expert's degree of certainty about his or her own conclusions, and the precise meaning of ambiguous words used in the report. Without some questioning of the experts concerning their technical conclusions, a factfinder simply cannot be expected to evaluate the various opinions, particularly when they are themselves inconsistent.
As pointed out by the Supreme Court, the goal in this proceeding is to seek the truth. The mere potential for delay should not divert us from this goal, especially in light of the severity of the punishment in this case. The procedure established by the majority will ensure that this goal is realized.
PARIENTE and LEWIS, JJ., concur.
WELLS, J., dissenting.
I dissent to the reversal of Judge Johnson's order denying petitioner's motion brought pursuant to Florida Rule of Criminal Procedure 3.811. I conclude that there are several substantial reasons why petitioner's motion should be denied and the order of Judge Johnson affirmed.
I begin by putting this rule 3.811 motion into its proper context in the history of this case. The murder for which Provenzano was sentenced to death occurred on January 10, 1984. The direct appeal was decided by this Court in October 1986. Mental competency to have committed the crime or to be tried was not an issue in the direct appeal. However, there was an issue raised and rejected as to whether the trial judge abused his discretion in failing to find that Provenzano's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. See Provenzano v. State, 497 So.2d 1177, 1184 (1986).
*42 The Governor signed Provenzano's first death warrant on March 7, 1989, and Provenzano filed his first motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Dr. Patricia Fleming, a psychologist, interviewed Provenzano for eight hours on March 13 and 14, 1989. No issue as to Provenzano's incompetency to be executed was raised in that motion or in those proceedings, even though a death warrant had been issued and a central issue in the postconviction proceeding was Dr. Fleming's report, which concluded that Provenzano had not been competent to stand trial. Nor was the issue part of this Court's review, which led to its 1990 decision in Provenzano's case.[6]See Provenzano v. Dugger, 561 So.2d 541 (Fla.1990). In its 1990 decision, this Court remanded the case on another ground for an additional postconviction proceeding before the trial court. Provenzano thereafter filed a second rule 3.850 motion, which was denied. In 1993, this Court affirmed. Provenzano v. State, 616 So.2d 428 (Fla.1993). In these proceedings there was no contention that Provenzano was incompetent to be executed, even though Dr. Fleming had conducted another interview with Provenzano in 1991.
Having run out of state court remedial options, Provenzano filed a petition pursuant to 28 U.S.C. § 2254 in the district court on June 30, 1993. There was no claim in that motion that Provenzano was incompetent to be executed, even though he had again been interviewed by Dr. Fleming on June 21, 1993. The United States District Court did not find an evidentiary hearing necessary. The court did issue a detailed opinion thoroughly analyzing each of Provenzano's claims. See Provenzano v. Singletary, 3 F.Supp.2d 1353 (M.D.Fla.1997). In that opinion, the Court did deal with and reject Provenzano's claim VIII that his constitutional rights were violated because "he was forced to undergo criminal judicial proceedings although he was not legally competent." The court's opinion says that "Petitioner relies primarily on the examination performed by Dr. Pat Fleming in 1989."
The denial by the United States District Court was appealed to the Eleventh Circuit, which affirmed the denial on August 6, 1998. There was no indication while the case was pending in the Eleventh Circuit of any claim that Provenzano was incompetent to be executed. See Provenzano v. Singletary, 148 F.3d 1327 (11th Cir.1998).
The Governor signed Provenzano's second and present death warrant on June 9, 1999. Provenzano thereafter filed his third rule 3.850 motion. This Court ordered that any further proceedings in the case be expedited in view of the execution being scheduled for July 7, 1999. On June 23, 1999, the circuit court held a preliminary hearing to consider Provenzano's most recent 3.850 motion. In what this Court stated was "a very comprehensive and well-reasoned order," the circuit court subsequently denied Provenzano's 3.850 motion. See Provenzano v. State, 739 So.2d 1150 (Fla.1999). In this third 3.850 proceeding there was no claim that Provenzano was incompetent to be executed, even though Dr. Fleming had sent her letter dated June 18, 1999, which is attached to Provenzano's motion claiming that he was incompetent to be executed filed in our Court on July 6, 1999. A claim was raised in the third 3.580 motion that Provenzano was incompetent to proceed in postconviction. This claim that Provenzano was incompetent to proceed in postconviction was rejected by the circuit court. We affirmed that rejection. Id. at 1155.
Dr. Fleming again interviewed Provenzano on July 5, 1999. Dr. Fleming's report, dated July 5, 1999, is attached to Provenzano's motion pursuant to rules *43 3.811 and 3.812, filed in this Court on July 6, 1999. On July 6, 1999, this Court entered an order which stated:
Upon the appointment of Judge Clarence Johnson in this case pursuant to Florida Rule of Criminal Procedure 3.811 and to provide Judge Johnson time to conduct proceedings pursuant to rule 3.811 and to provide this Court time to review any orders entered thereupon, this Court orders a stay of execution in this case until 7:00 A.M. on Friday, July 9, 1999. If Judge Johnson determines that no relief is warranted, an order shall be entered to that effect no later than 5:00 P.M. on Wednesday, July 7, 1999. In the event that Judge Johnson determines that a hearing is necessary pursuant to Florida Rule of Criminal Procedure 3.812, Judge Johnson has the authority to further stay the execution pursuant to rule 3.811(e).
Judge Johnson then issued his order denying the rule 3.811 motion on July 7, 1999. In another thorough and well-reasoned order, Judge Johnson stated:
A person under sentence of death shall not be executed while he or she is insane. See Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); Fla. R.Crim. P. 3.811. See also Martin v. Dugger, 686 F.Supp. 1523 (M.D.Fla.1988); § 922.07, Fla. Stat. In Florida, a person is considered to be "insane to be executed" if he or she "lacks the mental capacity to understand the fact of the impending execution and the reason for it." Fla. R.Crim. P. 3.811(b). See also § 922.070, Fla. Stat. When counsel for a death-sentenced individual has reason to believe that his or her client may be insane for purposes of execution, counsel may initiate proceedings with the Governor of Florida so that the individual's competency to be executed can be determined. See § 922.07, Fla. Stat. After the Governor's proceedings have concluded and the Governor has determined that the person is sane to be executed, counsel may file a motion for a determination of the individual's competency to be executed in the circuit court of the circuit in which the execution is to take place. See Fla. R.Crim. P. 3.811(c), (d).... After reviewing the motion and documents submitted to the court in support of the motion, if the circuit judge has "reasonable grounds to believe that the prisoner is insane to be executed, the judge shall grant a stay of execution and may order further proceedings which may include a hearing pursuant to [Florida Rule of Criminal Procedure] 3.812." Fla. R.Crim. P. 3.811(e). Thus, under rule 3.811, a hearing on the individual's competency to be executed is proper only where the motion and all documents submitted in support thereof establish "reasonable grounds" to believe the person is insane to be executed. If the individual fails to establish such "reasonable grounds," then a hearing is not proper.
As indicated above, in support of his motion Provenzano has submitted numerous documents to this Court as support for his motion. Those documents include affidavits of family members; affidavits of five fellow death row inmates; Provenzano's medical records; various Department of Corrections records; and two reports dated July 5, 1999, and June 18, 1999, issued by one expert, Dr. Patricia Fleming, a Clinical Psychologist. In her report dated June 18, 1999, Dr. Fleming, who at the time she issued said report apparently had not interviewed or examined Provenzano for several years, opined: "[I]t is my professional judgment that Mr. Provenzano is not competent to be executed." Despite her opinion on June 18, 1999, that Provenzano is not competent to be executed, no where in her subsequent report dated July 5, 1999, which was prepared after spending five hours interviewing and examining Provenzano, does Dr. Fleming render such a judgment. In fact, although Dr. Fleming states in her report dated July 5, 1999, that "[s]ince the purpose *44 of the evaluation was to evaluate Mr. Provenzano's competency to be executed, a focus was placed on his understanding of the nature and effect of the death penalty and why it is to be imposed," no where within her report does Dr. Fleming squarely address these two very limited issues.
Provenzano has not submitted the reports of any additional experts within his motion. Further, he has not indicated pursuant to rule 3.811(d)(3), that any of the evidence submitted to the governor for executive determination of sanity to be executed was not available for submission to this Court.
In response to Provenzano's motion, the reports of Provenzano's expert Dr. Fleming, and the other affidavits filed in support of Provenzano's motion, the State relies primarily on the unanimous report of Wade C. Myers, III, M.D., Alan J. Waldman, M.D., and Leslie Parsons, D.O., the three experts appointed by Governor Bush pursuant to section 922.07, Florida Statutes, to examine Provenzano's competency to be executed. In their report, Doctors Myers, Waldman, and Parsons opined: "It is our unanimous opinion with reasonable medical certainty that Thomas H. Provenzano does not suffer from any mental disease, disorder, or defect that would impair his ability to understand and appreciate the nature and effect of the death penalty and why it is to be imposed on him."
Therefore, this Court has been presented with two opinions issued by one expert, a Clinical Psychologist, who, in a report that was issued over two weeks before her most recent visit with Provenzano, specifically opined that Provenzano is not competent to be executed, and with one unanimous opinion issued by three experts, each Diplomats of the American Board of Psychiatry and Neurology in the subspecialty of Forensic Psychiatry, who opined that Provenzano is competent to be executed. Additionally, this Court has been presented with many affidavits and other documents which indicate that Provenzano has engaged in bizarre behavior, that he has abnormal beliefs, and that he may suffer from mental illness.
This Court finds that one expert's opinion, which was rendered at a time when she had not recently examined Provenzano, that Provenzano is not competent to be executed, along with documents which record bizarre beliefs and behavior, and the possible existence of mental illness, in addition to affidavits of several individuals who do not purport to be mental health experts, do not establish "reasonable grounds" to believe that Provenzano is insane to be executed.
(Footnotes omitted.) I conclude that both what Judge Johnson says in his order and the procedural history of the case are significant to this Court's present consideration of Judge Johnson's determination that there were no reasonable grounds to proceed to a rule 3.812 proceeding.
In answer to the questions posed by Chief Justice Harding's concurring opinion, it is my view that, while I agree with the majority that the time immediately before the execution is a time which is material to be evaluated on this issue, I believe that the history of this case, especially since the 1989 warrant issuance, is also relevant. A warrant was pending in 1989, and Dr. Fleming first interviewed Provenzano right after that warrant issued. Ford v. Wainwright had been decided by the United States Supreme Court in 1986, and rules 3.811 and 3.812 had been adopted at the end of 1987. I think it is relevant to the present consideration that there was no contention, based upon Dr. Fleming's report in 1989, that Provenzano was insane to be executed. Rather, the contentions in 1989 in the motion that was filed and in the subsequent postconviction proceedings in both state and federal courts were based upon Dr. Fleming's opinions that Provenzano had been incompetent *45 to be tried and was incompetent to proceed in postconviction. Both of these contentions were rejected by this Court and the federal court.
In view of Dr. Fleming's involvement since 1989 and there not being an assertion until July 6, 1999, that appellant was insane to be executed, I believe it is reasonable to conclude that what had to be evaluated by the circuit judge as to whether reasonable grounds existed under rule 3.811 was any deterioration in Provenzano's mental condition since 1989 on the specific limited issue of whether he is insane to be executed. This seems to me to be logical since the issue was not raised when the 1989 warrant was pending. Furthermore, the question before Judge Johnson on this discrete issue had to be analyzed as to how Dr. Fleming's opinion at present was different from the opinions which have been earlier reviewed in postconviction proceedings and found not to be a basis for relief. Dr. Fleming does indicate in the letters she wrote that are attached to the motion that Provenzano's mental condition has deteriorated. The question is whether Dr. Fleming's report said he had deteriorated so that he failed to be competent to be executed. In sum, though I agree that clearly the present mental status of the Provenzano is at issue, the decision made by Judge Johnson could not be in a vacuum without the earlier history of the Provenzano case being relevant to that consideration. Nor, in my opinion, can this Court's review of Judge Johnson's decision under rule 3.811 be made without considering all of this history. Obviously, if there had been previous assertions or reports prior to June 18, 1999, stating Provenzano was insane to be executed, there would be no question as to the relevance of that history.
I also consider what Justice O'Connor said in her concurring opinion in Ford v. Wainwright to be significant:
The prisoner's interest in avoiding an erroneous determination is, of course, very great. But I consider it self-evident that once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced accordingly. Moreover, the potential for false claims and deliberate delay in this context is obviously enormous. This potential is exacerbated by a unique feature of the prisoner's protected interest in suspending the execution of a death sentence during incompetency. By definition, this interest can never be conclusively and finally determined: Regardless of the number of prior adjudications of the issue, until the very moment of execution the prisoner can claim that he has become insane sometime after the previous determination to the contrary. These difficulties, together with the fact that the issue arises only after conviction and sentencing, convince me that the Due Process Clause imposes few requirements on the States in this context.
Medina v. State, 690 So.2d 1241, 1247 (Fla. 1997) (quoting Ford, 477 U.S. at 429, 106 S.Ct. 2595 (citations omitted)). Further, I point out the following from Justice Marshall's opinion in Ford v. Wainwright:
We do not here suggest that only a full trial on the issue of sanity will suffice to protect the federal interests; we leave to the State the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences. It may be that some high threshold showing on behalf of the prisoner will be found a necessary means to control the number of nonmeritorious or repetitive claims of insanity.

477 U.S. at 399 at 416-17, 106 S.Ct. 2595 (emphasis added) (footnote omitted). To deal with the requirements and the admonitions of Ford v. Wainwright, the procedure which this Court adopted at the end of 1987 in rules 3.811 and 3.812 provided that the threshold determination of whether a further evidentiary hearing is required is to be made by the circuit judge.
*46 I believe that rule 3.811 provides the safeguard which is required by the opinions of Justice Marshall and Justice O'Connor in Ford v. Wainwright. Rule 3.811 provides for a decision by the circuit court in order to provide the judicial review safeguard against an arbitrary decision by the Executive. However, rule 3.811 clearly does not provide for a move forward to a rule 3.812 hearing every time a prisoner files a report in which a psychologist has opined that the prisoner is incompetent to be executed. I conclude that the rule's requirement that the circuit court make a decision as to the existence of "reasonable grounds" intends what it plainly says, which is for the circuit court to make a decision as to whether reasonable grounds exist.
It has to be recognized that this proceeding comes immediately before a scheduled execution. In this case the process began only the day before the scheduled execution. Delaying the execution by simply invoking the process is not only a potential but rather is a certainty. It likewise has to be considered that a proceeding under rule 3.812 is an extensive proceeding. The rule provides:
(a) Hearing on Insanity to Be Executed. The hearing on the prisoner's insanity to be executed shall not be a review of the governor's determination, but shall be a hearing de novo.
Although the State can present the panel of mental health experts who were appointed by the Governor and who came to the conclusion on July 6, 1999, that Provenzano was incompetent to be executed, each side may present an entirely new battery of experts. The resultant delay and the extensiveness of what is involved in a rule 3.812 hearing must dictate the honoring of the rule 3.811 provision that before that proceeding is required, a judgment by the circuit court be made as to whether such a hearing is necessary.[7]
We held in Medina that review of the circuit court's decision as to whether there are reasonable grounds pursuant to rule 3.811(e) is on the basis of whether there was an abuse of discretion. Medina, 690 So.2d at 1246. I conclude that there is clearly a sufficient basis in this record to sustain Judge Johnson's decision against a claim that he abused his discretion. Judge Johnson clearly could reasonably make the decision that the record included what was at best an equivocal opinion of Dr. Fleming that Provenzano is incompetent to be executed and that Dr. Fleming's reports, when considered with the entire record, did not provide reasonable grounds for him to conclude that Provenzano was insane to be executed. My reading of the other affidavits and statements submitted to Judge Johnson, while showing that Provenzano's behavior was bizarre, do not sufficiently bolster Dr. Fleming's reports on the discrete issue of reasonable grounds to believe Provenzano insane to be executed to render Judge Johnson's conclusion an abuse of discretion.
The majority's reversal does nothing more than substitute its judgment for that of Judge Johnson. Moreover, in reality, this Court has now taken the rule 3.811 decision away from the circuit court and placed it with a mental health expert chosen by the prisoner. I think the majority has effectively rendered a nullity the safeguard which this Court determined in 1987 was necessary in this process.
NOTES
[1] This Court's stay of execution is set to expire on September 14, 1999, at 7 a.m. The Governor has reset Provenzano's execution for September 14, 1999, at 7:01 a.m.
[2] Florida Rule of Criminal Procedure 3.812 governs the hearing on a "prisoner's insanity to be executed" claim and explains the procedure for such a hearing.
[3] Florida Rule of Criminal Procedure 3.812 provides:

Hearing on Insanity at Time of Execution: Capital Cases
(a) Hearing on Insanity to Be Executed. The hearing on the prisoner's insanity to be executed shall not be a review of the governor's determination, but shall be a hearing de novo.
(b) Issue at Hearing. At the hearing the issue shall be whether the prisoner presently meets the criteria for insanity at time of execution, that is, whether the prisoner lacks the mental capacity to understand the fact of the pending execution and the reason for it.
(c) Procedure. The court may do any of the following as may be appropriate and adequate for a just resolution of the issues raised:
(1) require the presence of the prisoner at the hearing;
(2) appoint no more than 3 disinterested mental health experts to examine the prisoner with respect to the criteria for insanity to be executed and to report their findings and conclusions to the court; or
(3) enter such other orders as may be appropriate to effectuate a speedy and just resolution of the issues raised.
(d) Evidence. At hearings held pursuant to this rule, the court may admit such evidence as the court deems relevant to the issues, including but not limited to the reports of expert witnesses, and the court shall not be strictly bound by the rules of evidence.
(e) Order. If, at the conclusion of the hearing, the court shall find, by clear and convincing evidence, that the prisoner is insane to be executed, the court shall enter its order continuing the stay of the death warrant; otherwise, the court shall deny the motion and enter its order dissolving the stay of execution.
[4] We note that this is the first time that Provenzano has raised a competency to be executed claim.
[5] In the present case, the record contains a letter from Dr. Fleming, dated June 18, 1999, wherein she concludes that Provenzano is incompetent to be executed. Yet Provenzano did not file his section 922.07 claim until July 5, 1999, more than two weeks after receiving Dr. Fleming's June 18 letter.
[6] It must be noted that Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), was decided in 1986, and this Court adopted, on December 31, 1987, rules 3.811 and 3.812. See Amendments to Florida Rules of Criminal Procedure, 518 So.2d 256 (Fla. 1987).
[7] The majority takes comfort in this only being the third proceeding pursuant to rule 3.811 since its adoption in 1987. I think that comfort must be tempered by the fact that this is the second such motion in the last seven warrants since 1997.