750 So.2d 597 (1999)
Thomas H. PROVENZANO, Appellant,
v.
STATE of Florida, Appellee.
No. 96,453.
Supreme Court of Florida.
September 23, 1999.
*598 Michael P. Reiter, Chief Assistant CCRC, Capital Collateral Regional CounselMiddle, Tampa, Florida, for appellant.
Robert A. Butterworth, Attorney General, Carolyn M. Snurkowski, Assistant Deputy Attorney General, Tallahassee, Florida, and Carol M. Dittmar, Assistant Attorney General, Tampa, Florida, for appellee.
PER CURIAM.
Thomas H. Provenzano appeals an order entered by the circuit court finding him sane to be executed pursuant to Florida *599 Rule of Criminal Procedure 3.812. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons expressed below, we remand for further proceedings.
In Provenzano v. State, 751 So.2d 37 (Fla.1999), we reversed an earlier circuit court order and remanded for an evidentiary hearing pursuant to rule 3.812. Our opinion in that case was released on Thursday, August 26, 1999. The next day, the circuit court held a status conference. The court indicated that it would like to begin the hearing on Tuesday, August 31, 1999. Counsel for Provenzano originally indicated that defense expert Dr. Patricia Fleming would be available that week (the week of August 30). However, after the status conference on August 27, Provenzano learned that Dr. Fleming would not be available the week of August 30 due to a previous commitment. On Monday, August 30, the circuit court held another status conference at which counsel for Provenzano moved for a continuance. In support of this request, counsel for Provenzano submitted the following affidavit from Dr. Fleming:
1. My name is Patricia Fleming. I am a licensed clinical psychologist. I first completed a psychological evaluation of Thomas Provenzano on March 4, 1989 and followed his psychological condition during the years following his conviction. I completed a second psychological evaluation on July 4, 1999 to determine his current mental status and competency to be executed.
2. Upon my return to Cheyenne today, August 27, 1999, I received word that the Honorable Judge Bentley had scheduled an evidentiary hearing for Thomas Provenzano for the week of August 30, 1999. I am unable to be in Florida during this week due to prior commitments that cannot be changed on short notice.
3. Training for State of Wyoming employees has been scheduled during this week for a computer program that has been developed for case managers. It would not be possible to change the date since the participants and their supervisors throughout Wyoming will be in attendance. This meeting has been scheduled for over three months. On Monday, August 30 the meeting for finalization of the computer program and training is scheduled. On Wednesday, August 29[sic], we travel to the training site and return on Friday, September 3. In addition, I have hospital and office patients that I was not able to see during my recent absence.
4. I considered the option of requesting a telephone testimony, but there is not time to adequately prepare. It is necessary to review the records and prepare for testimony, which requires at least seven or eight hours, time that is not available during now and the time scheduled for the evidentiary hearing.
5. I examined Mr. Provenzano for competency to be executed on July 4, 1999 and my complete findings are available in that report. It is my professional opinion that Mr. Provenzano is incompetent to be executed due to the severity of his mental illness. Thomas Provenzano does not appreciate or understand the fact of his impending execution and the reason for it. I regret my inability to participate in the hearing.
6. I could be available for testimony September 7, 8, 9, or 10 of the following week.
Provenzano requested that if the court was intent on starting the hearing on August 31, the court should, at the very least, conclude the hearing on September 7, thus giving Dr. Fleming the opportunity to testify on the final day.
However, in making its decision as to whether to allow the continuance, the circuit court was concerned with the pending execution date in this case, which at the time was set for September 14, 1999:

*600 The Court: Let's say that I take the position, agree with the State, deny the continuance in this kind of case and shortly you will find yourself standing in Tallahassee defending the decision. The Supreme Court going to even think twice or they going to continue the warrant, continue the hearing?
Ms. Dittmar [State]: Well, your honor, this is Carol Dittmar. I hesitate to speak for the Florida Supreme Court.
The Court: Well, I know that but I think you know what I'm asking is, you know.
Ms. Dittmar: I don't see there would be any major concerns. Obviously, they were aware of the execution date when they sent this back. They did not extend the stay. I'm sure they understood it would be difficult to be there. They also, I think, believe that with modern advances of technology we have telephones, we have potential for video tape deposition and I'm sure they felt like the parties could use those resources in order to get the hearing done.
The circuit court also made the following comments concerning its ability to stay these proceedings:
And I am concerned on the other hand we have time factors. They certainly indicated they want this done because they didn't extend their warrant date which they could certainly have stayed.
. . . .
Well, I'm not so sure that I'm in a position to enter a stay. The Supreme Court obviously can, but they haven't done that. They know what the time frame is, so they hadn't set the time for a hearing, but it seems to me that if I issued one, obviously, it might not stick, even if you are right that I have the authority to do it. That doesn't mean that its going to prevail.
The court eventually denied the request for a continuance, offering instead to allow Dr. Fleming to testify by telephone.
Over the next three days, efforts were made by counsel for Provenzano and the State to contact Dr. Fleming at her conference in Wyoming. However, Dr. Fleming was not contacted until Thursday, September 2, the last day of the hearing. Dr. Fleming was unable to offer any substantive testimony regarding Provenzano's competency because she did not have the necessary notes and files with her.[1] In this appeal, Provenzano claims that the circuit court abused its discretion by denying his motion for continuance. We agree.
While our opinion of August 26, 1999, did not stay the execution and left the circuit court uncertain regarding its authority to extend the stay,[2] a continuance of the hearing until September 7, in order to allow Dr. Fleming to testify, would not in and of itself have interfered with the execution date of September 14. This would still have allowed the circuit court to enter an order on September 7 or shortly thereafter. If on appeal of the order this Court determined that it could not review the order within the time previously established, then we could have stayed the execution at that time. At oral argument, the State alleged that a defendant could delay an execution indefinitely simply by continually claiming that one witness is unavailable. However, the record in this case does not reflect such an effort by Provenzano.
As stated by this Court in Gore v. State, 599 So.2d 978, 984 (Fla.1992), "the decision to grant or deny a continuance is within the sound discretion of the trial court." Thus, the question for this Court *601 is whether the circuit court below abused its discretion when it denied Provenzano's motion for a continuance. We conclude that it did. This Court's opinion directing the circuit court to conduct the rule 3.812 hearing detailed the history of Provenzano's incompetency claim. The opinion recognized that the evidence, which included expert reports from both parties, "created questions of fact on this issue." Provenzano, 751 So.2d at 40. The direction of this Court was clearwe wanted this matter to be "resolved in the crucible of an adversarial proceeding." Id. Because Dr. Fleming never testified, the purpose of our previous remand was never realized. Considering all of the factors in this case, including the request for a reasonable delay to hear the testimony of Dr. Fleming, who stated that she would be available on September 7, four days after the order was entered in this case, and the unsuccessful attempts to acquire Dr. Fleming's testimony via telephone, we find that the circuit court erred in denying Provenzano's motion for a continuance.
Our resolution of the first issue requires a remand for further proceedings. However, we address the other claims raised by Provenzano in order to offer guidance to the circuit court on remand. Provenzano claims that the circuit court erred by not finding Dr. Fleming to be an expert in clinical psychology. Dr. Fleming testified that she has a bachelor's, a master's and a doctoral degree in psychology. In its order, the circuit court stated:
Dr. Fleming's brief testimony established that while she has experience in mental health, she is not a clinical psychologist, at least not as that term is used in Florida. [Footnote: Dr. Fleming is an Ed.D., or doctor of education in psychology, not a Ph.D. in clinical psychology.] Accordingly, she was accepted as an expert in mental health, but not as an expert in clinical psychology.
It appears the circuit court based its decision on the fact that Dr. Fleming had an Ed.D. and not a Ph.D. However, section 490.003, Florida Statutes (1997), states in relevant part:
DefinitionsAs used in this chapter:
. . . .
(3)(a) Prior to July 1, 1999, "doctorallevel psychological education" and "doctoral degree in psychology" mean a Psy. D., an Ed.D. in psychology, or a Ph.D. in psychology from:
1. An educational institution which, at the time the applicant was enrolled and graduated, had institutional accreditation from an agency recognized and approved by the United States Department of Education or was recognized as a member in good standing with the Association of Universities and Colleges of Canada; and
2. A psychology program within that educational institution which, at the time the applicant was enrolled and graduated, had programmatic accreditation from an accrediting agency recognized and approved by the United States Department of Education or was comparable to such programs.
(Emphasis added.)[3] Thus, according to section 490.003, a "doctoral degree in psychology" includes an Ed.D. as well as a Ph.D. Further, section 394.455(2), Florida Statutes (1997), defines "clinical psychologist" as "a psychologist as defined in s. 490.003(7) with 3 years of postdoctoral experience in the practice of clinical psychology, inclusive of the experience required for licensure, or a psychologist employed by a facility operated by the United States Department of Veterans Affairs that qualifies as a receiving or treatment facility under this part." Merriam Webster's Collegiate Dictionary defines "clinical" as "involving the direct observation of the patient." Merriam Webster's Collegiate Dictionary 215 (10th ed.1994).
*602 Dr. Fleming testified that she is a licensed psychologist in the state of Wyoming. Since 1978, she has been in a private practice with other psychiatrists, psychologists, and counselors. She testified that her practice includes both clinical and forensic psychology.
"The determination of a witness's qualifications to express an expert opinion is peculiarly within the discretion of the trial judge, whose decision will not be reversed absent a clear showing of error." Ramirez v. State, 542 So.2d 352, 355 (Fla. 1989). The circuit court below, as factfinder, can determine the appropriate weight to be given to Dr. Fleming's testimony. See Charles W. Ehrhardt, Florida Evidence § 702.1, at 555 (1999 ed.). However, the circuit court's conclusion that Dr. Fleming was not an expert in clinical psychology goes to her qualifications. It appears that the circuit court either was not aware of or did not consider section 490.003 and section 394.455 when it concluded that Dr. Fleming was not an expert in clinical psychology. While we express no opinion regarding the weight to be given to Dr. Fleming's testimony, we find that Dr. Fleming qualifies as an expert in clinical psychology.
Provenzano also claims that Florida Rule of Criminal Procedure 3.811 is unconstitutional. Provenzano alleges that the test for competency stated within the rule does not allow for the rational appreciation of the connection between the crime and the punishment. In Martin v. State, 515 So.2d 189, 190 (Fla.1987), this Court implicitly rejected this claim. Subsequent to this Court's decision in Martin, Martin sought relief in federal district court. In Martin v. Dugger, 686 F.Supp. 1523, 1572 (S.D.Fla.1988), aff'd, 891 F.2d 807 (11th Cir.1989). Judge King stated the following regarding the test to be applied to claims of incompetency to be executed:
While the condemned prisoner need not understand the nature of the collateral death penalty proceedings, the eighth amendment does require a limited factual understanding, which must be combined with an even more limited rational understanding.
. . . .
... For this reason, courts have found that the rationality to be demonstrated "is that of an objective rationality what would be regarded as rational to the average person." [United States v. Blohm, 579 F.Supp. 495, 499 (S.D.N.Y. 1983) ]. These authorities support the objective portion of the appreciation definition.
(Emphasis added.)
In its order, the circuit court in this cause recognized that rule 3.811 includes a rationality element:
The Court finds the standard set forth in rule 3.811(b), that the person must have the mental capacity to understand the fact of the impending execution and the reason for it, does allow for a prisoner's rational appreciation of the connection between his crime and the punishment he is to receive.

(Emphasis added.) However, when Provenzano attempted to cross-examine Dr. Leslie Parsons[4] regarding Provenzano's rational understanding of the death penalty, the State objected, claiming that the question went beyond the legal definition of competency to be executed. This objection was sustained.
We agree with the circuit court that, pursuant to Judge King's opinion in Martin, the test for competency under rule 3.811 contains a rationality element, albeit a limited one. Thus, we find no merit to Provenzano's claim that rule 3.811 is unconstitutional. However, because the test includes a rationality element, Provenzano should be afforded the opportunity to cross-examine Dr. Parsons concerning *603 Provenzano's rational appreciation of the connection between his crime and the punishment he is to receive.
Finally, Provenzano claims that rule 3.812 is unconstitutional. Provenzano asserts that the rule is unconstitutional because it creates the standard of proof of incompetency to be "clear and convincing" instead of the "by a preponderance of the evidence" standard announced in Cooper v. Oklahoma, 517 U.S. 348, 355, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). We rejected this argument in Medina v. State, 690 So.2d 1241, 1246-47 (Fla.1997).
Accordingly, for the reasons stated in this opinion, we remand this case to the circuit court. The circuit court shall afford Provenzano a reasonable opportunity to present the testimony of Dr. Fleming. Dr. Fleming shall be accepted as an expert in clinical psychology. Further, counsel for Provenzano shall have the opportunity to cross-examine Dr. Parsons regarding Provenzano's rational appreciation of the connection between his crime and the punishment he is to receive. Finally, the circuit court may take any further steps which it deems appropriate consistent with rule 3.812. We stay Provenzano's execution, which was scheduled for September 24, 1999. After the hearing, if the circuit court determines that Provenzano is competent to be executed, the stay which we have granted will continue until 7 a.m. on the twenty-first day following the date of the circuit court's order. No motion for rehearing will be permitted.
It is so ordered.
HARDING, C.J., and PARIENTE, J., concur.
ANSTEAD, J., concurs specially with an opinion.
LEWIS, J., concurs specially with an opinion.
SHAW, J., concurs in result only.
WELLS, J., dissents with an opinion, in which QUINCE, J., concurs.
ANSTEAD, J., specially concurring.
I concur in the majority's remand in order for the appellant to be provided with a reasonable opportunity to present evidence, including expert opinion evidence, of his competency to be executed. Unfortunately, it appears that these proceedings were driven by the perceived need to be certain that there would be no delay in the date of execution set for the defendant. We must share the blame for that perception by not being more explicit in our opinion that the critical focus of the trial court should be on determining the competency of the defendant, rather than on rushing to get the proceedings over in time for the scheduled execution to take place.
The reality is that appellant's lawyers were not told that they would be allowed an evidentiary hearing on the competency issue until August 26, 1999. A fundamental part of due process is that litigants, including capital defendants, be given reasonable time in which to secure and present evidence, including the testimony of live witnesses, at a trial or evidentiary hearing. Here, the request was only for a little over a week or until September 7, 1999, in order to secure the attendance of the critical witness for the defense. This was a patently reasonable request, especially considering the nature of the proceedings.
The trial court has the important responsibility now of getting these proceedings back on track by ensuring that the focus is indeed on the issue of the competency of the defendant, and that the consideration and a determination of that issue not only be thorough and fair, but also appear to be thorough and fair. Certainly the resolution of such an issue should not turn on some technical difference in the qualifications of one mental health expert over another or the negative emotional reaction to a perceived lack of cooperation *604 by the mental health expert in not immediately dropping everything and jumping on a plane to Florida.
It may be difficult, but the confusion and misunderstandings that clouded the proceedings before must be set aside. Fortunately, there appears to be an abundance of evidence on the mental health history and competency of this defendant, and the trial court must focus on sorting out that evidence in a reasoned process and analysis so that we can all have confidence in the outcome.
LEWIS, J., specially concurring.
I concur in the majority opinion and write only because we once again encounter imposition of the ultimate penalty without the full measure of the deliberative process. The issue of competency for execution, by its very nature, can only be confronted in close proximity to an execution. That does not mean, however, that the process to resolve the issue deserves less consideration than other steps in the judicial processing of this type of case. There is an established right under the Eighth Amendment of the United States Constitution which prohibits the execution of one who is insane, as set forth by the United States Supreme Court in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Although the Ford decision did not provide a unified voice for definitional and procedural requirements, it is clear that a fundamentally fair process is required to ensure that the constitutional right recognized in Ford is protected. See, e.g., 477 U.S. at 424, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment) (emphasizing "[i]t is clear that an insane defendant's Eighth Amendment interest in forestalling his execution unless or until he recovers his sanity cannot be deprived without a `fair hearing.' Indeed, fundamental fairness is the hallmark of the procedural protections afforded by the Due Process Clause") (emphasis added). Florida has a procedural mechanism in place to accommodate resolution of the Ford issues, but application of the procedural mechanism here violated fundamental due process requirements to permit the presentation of desired evidence.
The constitutional right involved in this consideration would be rendered a hollow shell, and indeed meaningless, without proper interpretation and application of the procedures for enforcement. This right, unfortunately, is not self-executing, and the right is of no value if procedures such as those utilized here are the standard by which the right is protected. Cf. Ramirez v. State, 542 So.2d 352, 355-56 (Fla.1989). Procedures are not simply "technical" niceties which serve no purpose other than to complicate or delay judicial proceedings. Procedures give life to due process rights afforded all citizens, whether those citizens are challenging a speeding ticket or, as here, presenting evidence during an evidentiary hearing to determine sanity to be executed. Procedures count.
The necessity of conducting proceedings here was based not upon some fanciful suggestion by an untrained person, but upon an analysis presented by a mental health professional. There is, indeed, a long history over a significant number of years of mental health issues concerning this inmate. Here, Provenzano proffered written materials from Dr. Patricia Fleming, the last being a twelve-page comprehensive assessment of his mental health history. Dr. Fleming has examined Provenzano at least six times since 1989, including fifteen hours of personal evaluation, and spent other time examining transcripts, evaluation reports, depositions, and witness statements. She expressed her opinion in June 1999 that "It is my professional judgment that Mr. Provenzano is not competent to be executed." Following an additional five-hour evaluation of Provenzano in early July 1999, Dr. Fleming prepared and submitted a second comprehensive report. The second report demonstrated that the inmate was unable *605 to connect his criminal conduct and the execution. Provenzano has sought to present this witness in person during the hearing below.
Clearly, Florida Rule of Criminal Procedure 3.811(e) contemplates satisfaction of a threshold to warrant an evidentiary hearing for a determination of the ultimate facts. The rule was promulgated to give effect to the new constitutional right enunciated in Ford, 477 U.S. at 409-10, 106 S.Ct. 2595, "that the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." See Fla.R.Crim.P. 3.811(b) ("a person under sentence of death is insane for purposes of execution if the person lacks the mental capacity to understand the fact of the impending execution and the reason for it."). However, because the heightened procedural protections of the guilt and penalty phases of a capital trial are not implicated, the inmate still must shoulder the heavy burden of showing by clear and convincing evidence that he is insane to be executed. See Fla.R.Crim.P. 3.812(e). Thus, this two-step process vindicates the prisoner's substantial interest in not being executed while insane, while at the same time promoting the state's interest in the accuracy of competency determinations, which upholds the integrity of the criminal justice system. See Paul F. Enzinna and Jana L. Gill, Capital Punishment and the Incompetent: Procedures For Determining Competency to be Executed After Ford v. Wainwright, 41 Fla. L.Rev. 115, 123 (1989). To conduct an evidentiary hearing without affording the opportunity to present live testimony from the key witness defeats both interests. See Ford, 477 U.S. at 415, 106 S.Ct. 2595 (plurality opinion) (reasoning "[w]ithout some questioning of the experts concerning their technical conclusions, a fact-finder simply cannot be expected to evaluate the various opinions, particularly when they are themselves inconsistent") (emphasis added); see also Medina v. State, 690 So.2d 1241, 1246 (Fla.1997) (concluding that the reports of two psychologists and a psychiatrist met "the reasonable-ground threshold of rule 3.811(e) and that it was an abuse of discretion not to have an evidentiary hearing pursuant to rule 3.812 in view of the conflicting opinions of the experts") (emphasis added).
I express no opinion as to whether Provenzano is sane or insane to be executed based upon the present record. However, because there was a dispute created by differing opinions of mental health professionals, I question a process which denies a short continuance to afford an opportunity to present the live testimony of the inmate's key witness. The issue at this stage is not what the ultimate factual determination may be. On the contrary, the issue is this Court's nondelegable duty to protect the process and procedures that give substance and meaning to a constitutional right recognized by our nation's highest court.
I find it difficult to fault the trial judge here because his hesitation to afford a short continuance may have been the product of his interpretation of this Court's prior orders. However, we must never permit the call for prompt judicial action to overshadow the quality of the justice administered. Here, on August 26, 1999, this Court issued its opinion directing that an evidentiary hearing be conducted, notification of a problem with the availability of witness Fleming arose on August 27, 1999, and the evidentiary hearing proceeded during the week of August 30, 1999. Has the judiciary forgotten or lost sight of the tremendous demands placed upon the shoulders of the trial lawyers of Florida, or have we simply placed form over substance? Even under the best of circumstances, it would have been difficult to proceed so rapidly, particularly with the inmate's key witness being a professional person residing and working in Wyoming.
As to the evaluation of the credentials and qualifications of witness Fleming and the weight to be afforded the ultimate testimony, I agree that after a witness has *606 been accepted by the Court as an expert witness and permitted to express opinion testimony, it is the fact finder, in this case the trial judge, who must weigh and consider the totality of the evidence. Thus, Chapter 490, Florida Statutes, which is intended primarily to address issues of licensing and confidentiality of communications, and chapter 394, Florida Statutes, do not prescribe the particular weight that must be afforded certain witnesses as a matter of law. Even the weight to be afforded the testimony of multiple experts having identical educational degrees may vary depending upon the quality of the institutions from which the degrees have been awarded.
Finally, my analysis of the proceedings below leads me to conclude that there was some element of hesitancy on the part of witness Fleming to do that which needed to be done to be available to present testimony in the normal course of the proper administration of justice. Therefore, I agree with Justice Wells that we should apply reasonable time parameters within which the testimony of this witness is to be presented, a default of which would close the proceedings and cause this Court to review the substance of the matter on the record presented. I would conclude that a period of not more than thirty days would provide a reasonable opportunity for the presentation of the live testimony of witness Fleming and completion of the cross-examination of witness Parsons.
WELLS, J., dissenting.
I dissent to the majority's again remanding this case to the circuit court for a second hearing pursuant to Florida Rule of Criminal Procedure 3.812. My complete reading of the record of the hearing before Judge Bentley shows:
1. The trial judge applied the appropriate law from this Court's August 26, 1999, decision in this case and Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).
2. The trial judge adhered to the procedure set forth in rule 3.812.
3. The trial judge allowed the full presentation of all witnesses which Provenzano called to testify at the hearing.
4. The trial judge assisted Provenzano's counsel in an extensive effort to obtain the live testimony of witness Dr. Fleming, a psychologist, either in person or by telephone. When the witness was finally located at a conference in Casper, Wyoming (through the effort of the Attorney General), she told the judge she would not then make any statements concerning Provenzano because her file was in Cheyenne, Wyoming. Thereupon, the trial judge directed the witness to state her background and training so that the record would reflect her qualifications as a mental health expert. The witness complied with this direction. The trial judge then accepted the witness as a mental health expert. The trial judge admitted the witness's reports in evidence. Such reports are specifically permitted to be admitted by the trial judge by rule 3.812(d).[5] No proffer was made of any additional evidence this witness would have presented.
5. Provenzano's counsel was allowed full cross-examination of the State's witnesses, including the mental health experts presented by the State. This Court sustained one objection about which Provenzano raises an issue to a question which was essentially confusing in form. Provenzano's counsel made no attempt to restate the question or to proffer any evidence that the question was intended to elicit.
*607 6. The trial judge entered an extensive order explaining his conclusion that Provenzano was sane to be executed.
Under the circumstances of this case, I do not find that Judge Bentley abused his discretion in timely completing the evidentiary hearing and reaching a conclusion based upon evidence which is expressly authorized by the rule. This Court stayed the execution on July 8, 1999, to the specific date of September 14, 1999. In our order of July 8, we also set oral argument for August 24, 1999, and stated that one of the issues to be presented was as to the standard of review for reasonable grounds to be executed under rule 3.811. On August 26, 1999, this Court issued its opinion in which the majority found Judge Clarence Johnson had abused his discretion in finding that there were no reasonable grounds to conclude that Provenzano was insane to be executed. Because of the unavailability of Judge Johnson to preside over the remand, Judge Bentley was appointed the successor trial judge. This appointment was made by the Chief Justice of this Court on August 26, 1999. In neither this Court's opinion on remand nor the order appointing Judge Bentley did this Court extend or in any way change its order of July 8, 1999, in which the stay was ordered through 7 a.m. on September 14, 1999. Judge Bentley had every reason to conclude that the evidentiary hearing needed to be concluded so that his ruling could be timely reviewed by this Court prior to the expiration of the stay which this Court had ordered.[6]
The majority circumvents the stay issue by finding that Judge Bentley abused his discretion in failing to continue the hearing until September 7, 1999. Counsel for Provenzano first represented to the Court that Dr. Fleming would be available on August 31, 1999. Counsel thereafter represented to Judge Bentley that Dr. Fleming communicated to him that she would not be available on August 31 and faxed the affidavit which was executed on August 27, 1999. Counsel for Provenzano subsequently lost contact with Dr. Fleming. Because counsel for Provenzano could not contact Dr. Fleming, he agreed that the Attorney General could help in the search. Judge Bentley expended considerable time on the record in discussing ways to locate Dr. Fleming. Finally, she was contacted by telephone on the afternoon of September 2, 1999. In that telephone conversation there was no statement by her as to when she would be available to testify, under what circumstances she would be available, or whether she would be available by telephone or in Florida.
In his order, Judge Bentley explained why he did not believe the evidentiary hearing should be continued until September 7.
If this matter had been delayed until the week of September 7, 1999, not only would it be difficult to conclude this matter in a period of time sufficient to enable the Florida Supreme Court to review these proceedings before Provenzano's scheduled execution date of September 14, 1999, but scheduling problems with other witnesses would have been created. Considering all of the circumstances, including the fact that *608 this claim was raised by Provenzano's counsel over one and one-half months ago, the Court concluded that Dr. Fleming's affidavit did not set forth adequate grounds which would justify continuing this matter, and consequently, Provenzano's oral motion to continue was denied. However, the Court advised Provenzano's counsel that Dr. Fleming could testify by telephone or video deposition, and that she could testify out of order. Further, the Court advised counsel that Dr. Fleming's testimony could be scheduled as early in the morning as necessary, which, given the time zone differences between here and Wyoming, would accommodate Dr. Fleming's schedule and avoid any conflict with the conference that she was attending or participating in.
The majority totally ignores the dynamics of what was occurring before the trial judge in respect to this witness, which is gleaned from a full reading of the record. I cannot conclude that a fair reading of the total record indicates that Judge Bentley abused his discretion.
More importantly, however, the record reflects that there was adversarial testing in accord with the procedures of rule 3.812 as to whether Provenzano is insane to be executed, which was the stated reason the majority remanded this case back to the trial judge. The State presented the mental health experts who had examined Provenzano upon the appointment of Governor Bush. These were Dr. Wade Myers, a board-certified psychiatrist who is a professor of psychiatry at the University of Florida College of Medicine; Dr. Alan J. Waldman, a board-certified psychiatrist and a graduate of Case Western College of Medicine who has been in the private practice of psychiatry in Pinellas County, Florida and is presently Medical Director of the North Florida Evaluation and Treatment Center in Gainesville, Florida, and who has also lectured in psychiatry at the University of Florida; and Dr. Leslie Parsons, who is an osteopathic physician who performed a four-year residency in psychiatry at the University of Florida College of Medicine and is presently affiliated with the Northeast Florida State Hospital in Macclenny.
Provenzano's counsel was allowed to and did perform an extensive and wide-ranging cross-examination of these doctors. There was only one instance in which there was a sustained objection, which was at the end of the cross-examination of Dr. Parsons. The full context of this exchange was:
A. Is there a difference between rational and cognitive?
Q. Uh-huh.
A. Yes.
Q. Could you explain that?
A. Could you give me a context, like a sentence?
Q. Well, you indicated that Mr. Provenzano understands, I believe you said, the nature of the death penalty and the reason for it. Is that what you said?
A. Nature and effect of the death penalty.
Q. Okay. And that's a factual understanding, or a cognitive one, one's present ability in the mind to relate to?
A. Yes.
Q. Would a rational one be with regard to if a person suffers from delusions, and although he understands the factual aspect, in combining the two with regard to rational and factual, is it possible for a person to have not a rational understanding, but a factual one?
A. I would say so.
Q. Did you make any interpretation or determination as to Mr. Provenzano's rational understanding?
MR. NUNNELLEY: Your Honor, that's not the legal standard. I object.
THE COURT: Sustained.
MR. REITER: If I might make one argument?
THE COURT: You may.
MR. REITTER: Inasmuch as I filed the motion for the court to make that determination, if the court should rule in *609 my favor, then we would wind up coming back here to get that information again.
THE COURT: Your argument is you get to ask the question in case I find the statute unconstitutional?
MR. REITER: Correct.
THE COURT: I'm not sure what you're saying.
MR. REITER: Well, the point being is if the court should determine that either the status of the law does include rational or that it's unconstitutional, if it doesn't, then the determination of whether the experts believe it to be rational is important.
THE COURT: I'm not sure I understand that's what your motion is asking. At any rate, I'm sustaining the objection.
MR. REITER: Okay.
THE COURT: Let's move on.
As I stated earlier, this exchange was at best confusing. There was no proffer by Provenzano's counsel of what was being sought. Even if the Court erred in not allowing this confusing question, a finding with which I do not agree in view of the form of the question, the error was patently harmless beyond a reasonable doubt. The majority totally fails to explain how it was harmful. Provenzano points to no other restrictions on his adversarial testing of the State's mental health experts.
In respect to Dr. Fleming, even if the judge abused his discretion in not extending the hearing until September 7, which I in no way agree that he did, again this was a harmless error on the basis of the record in these proceedings. First, the rule specifically and expressly permits the Court to accept reports, which the trial judge did. Second, Provenzano proffers not one scintilla of evidence that would have been admissible from Dr. Fleming which was not contained in her reports; nor does the majority offer any. Third, the adversarial testing of Dr. Fleming was not to be by Provenzano but by the State. It was the State, not Provenzano, who was harmed by not having Dr. Fleming available for cross-examination. Though the majority clearly appears frustrated that Dr. Fleming did not testify when it concludes, "the purpose of our previous remand was never realized," the majority utterly fails to explain how.
As to the majority's decision in respect to whether Judge Bentley properly recognized Dr. Fleming as an expert, the majority is wrong as to what the record indicates Judge Bentley concluded; and, in actuality, any error is necessarily harmless. Judge Bentley found only that Dr. Fleming was not a clinical psychologist. I am at a loss as to why the majority cites to section 490.003, Florida Statutes. Judge Bentley stated in his order:
Once Dr. Fleming was located and contacted via telephone, she declined to testify whatsoever regarding her opinions of Provenzano's competency to be executed. Specifically, she stated she did not have any of her materials with her and that she was unable to provide any testimony regarding Provenzano's competency to be executed. In fact, the Court was forced to order her to stay on the telephone line simply to answer some questions regarding her qualifications.
The State stipulated to the admission of Dr. Fleming's Curriculum Vitae, which it rather than Provenzano's counsel had obtained in an effort to determine Dr. Fleming's credentials, and the State stipulated to the admission of Dr. Fleming's report dated July 5, 1999, which she prepared after conducting her examination of Provenzano on July 4, 1999. However, the State would not stipulate that she was an expert in the field of forensic clinical psychology. Thus, the purpose of obtaining information from Dr. Fleming regarding her qualifications was to clarify exactly what Dr. Fleming's qualifications are, and to assist this Court in determining what weight to give the report that she prepared *610 after her July 4, 1999, examination of Provenzano.
Dr. Fleming's brief testimony established that while she has experience in mental health, she is not a clinical psychologist, at least not as that term is used in Florida. Accordingly, she was accepted as an expert in mental health, but not as an expert in clinical psychology. The Court finds that her credentials are less impressive than the credentials of the other experts. For this reason, together with a consideration of her report, the Court finds her testimony is entitled to less weight than the testimony and/or reports of the other experts who were admitted as experts in psychiatry or clinical psychology.
(Emphasis added.) I find the majority, in reality, erroneously mixes the concept of admissibility and weight. Judge Bentley only discusses weight, which was clearly within his province. See Tibbs v. State, 397 So.2d 1120 (Fla.1981). The point that the majority misses is that Judge Bentley accepted Dr. Fleming as an expert so as to make her report admissible and thus any error as to whether she was a clinical psychologist only went to weight and was again patently harmless. Again the point which the majority ignores is that rule 3.812(d) says reports are admissible, and the report was admitted. Nothing else has been demonstrated except that the witness did not appear, which was not required or demonstrated to have been harmful.
Finally, I specifically dissent from the unlimited stay of execution which the majority now enters. This is, of course, the third stay since July 8, 1999. Pursuant to article V of the Florida Constitution, it is this Court's obligation to administer the courts of this state. This includes case management in capital cases. Case management in this capital case requires a fixed period in which the record below is to be completed. Frankly, I do not understand what the trial judge is to do in this case if Dr. Fleming refuses to appear to give testimony for a month, two months, or even longer. The trial court cannot require Dr. Fleming to come to Florida. It is foreign to my experience that a witness, even a medical expert, is allowed to set the Court's calendar. If the Provenzano execution must be again stayed by the majority, it clearly should be for a set period.
Moreover, there is no indication of what the majority expects the trial judge to do if Dr. Fleming appears and testifies. If her testimony is different from her reports, can she be impeached by her reports? Can reports be accepted by a trial court, or is the majority rewriting the rule? Is the weight to be given evidence the province of the trial court? In sum, I regretfully conclude that the majority's decision and opinion will result in great confusion as to how this case and future cases under warrant are to proceed.
QUINCE, J., concurs.
NOTES
[1] Dr. Fleming practices in Cheyenne, Wyoming. However, the conference she was attending was located in Casper, Wyoming.
[2] We are aware of section 922.06, Florida Statutes (1997), which provides that a stay may be entered only by the Governor or incident to appeal. However, neither the State nor the circuit court referred to this statute as the reason for their concern about issuing a stay.
[3] While the record does not reflect the accreditation of the school where Dr. Fleming received her Ed.D., the State did not raise an objection to this issue.
[4] Dr. Parsons is one of the psychiatrists appointed by the Governor to examine Provenzano regarding his competency to be executed.
[5] Florida Rule of Criminal Procedure 3.812(d) provides:

(d) Evidence. At hearings held pursuant to this rule, the court may admit such evidence as the court deems relevant to the issues, including but not limited to the reports of expert witnesses, and the court shall not be strictly bound by the rules of evidence.
[6] Though it was not a basis of the trial judge's ruling, there is a legal issue as to whether he could enter a stay in compliance with section 922.06, Florida Statutes, which states:

Stay of execution of death sentence.
(1) The execution of a death sentence may be stayed only by the Governor or incident to an appeal.
(2)(a) If execution of the death sentence is stayed by the Governor, and the Governor subsequently lifts or dissolves the stay, the Governor shall immediately notify the Attorney General that the stay has been lifted or dissolved. Within 10 days after such notification, the Governor must set the new date for execution of the death sentence.
(b) If execution of the death sentence is stayed incident to an appeal, upon certification by the Attorney General that the stay has been lifted or dissolved, within 10 days after such certification, the Governor must set the new date for execution of the death sentence.