507 So.2d 602 (1987)
John MILLS, Jr., Appellant,
v.
STATE of Florida, Appellee.
John MILLS, Jr., Petitioner,
v.
Richard L. DUGGER, Respondent.
Nos. 70471, 70481.
Supreme Court of Florida.
May 5, 1987.
Larry Helm Spalding, Capital Collateral Representative, Mark Evan Olive, Litigation Coordinator, James C. Lohman and David Milford, Staff Attys., Office of the *603 Capital Collateral Representative, Tallahassee, for appellant/petitioner.
Robert A. Butterworth, Atty. Gen., and Mark Menser, Asst. Atty. Gen., Tallahassee, for appellee/respondent.
PER CURIAM.
John Mills appeals the trial court's denial of his Florida Rule of Criminal Procedure 3.850 motion to vacate his death sentence. He also asks this Court to stay his impending execution and grant his petition for writ of habeas corpus. We have jurisdiction. Art. V, §§ 3(b)(1), (9), Fla. Const; Fla.R.Crim.P. 3.850. We affirm the trial court's order and deny the stay of execution and petition for habeas corpus.
A jury convicted Mills of first-degree murder, among other things, and recommended that he be sentenced to death. The trial court imposed a death sentence, and this Court affirmed both the conviction and sentence. Mills v. State, 462 So.2d 1075 (Fla.), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985). Recently, the governor signed Mills' death warrant, prompting the current proceedings.

3.850
Mills made the following claims in the 3.850 motion: 1) a stay and continuance were needed; 2) the state refused to reveal exculpatory evidence; 3) trial counsel failed to discover and use evidence withheld by the state; 4) the state argued falsely to the jury and allowed the presentation of false testimony and misimpressions; 5) the state made Mills' girlfriend its agent; 6) instead of trying Mills for first-degree murder, the state tried him for being a bad person, a muslim, a white hater, and a criminal; 7) Mills was absent from critical portions of his trial; 8) the jury had been misinformed as to its role in sentencing; 9) trial counsel was ineffective for failing to object to improper state argument to the jury; 10) a change of venue should have been granted; 11) trial counsel was ineffective for not presenting properly the issue of racial bias in arguing for a change of venue; 12) the state selected the jury venire in a racially biased manner; 13) trial counsel failed to investigate and present compelling mitigating evidence; and 14) the trial court improperly adopted the state's sentencing findings.[1] The court held an evidentiary hearing regarding prosecutorial misconduct and trial counsel's effectiveness. The court denied the other claims as being not cognizable under rule 3.850.
Rule 3.850 states, in part: "This rule does not authorize relief based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." We agree with the trial court's summary dismissal of most of the claims because they could have been, should have been, or were raised previously.[2]
After the evidentiary hearing, the court found no evidence to support the claims of prosecutorial misconduct and ineffective assistance of counsel and denied relief. The trial court addressed all of the claims covered by the evidentiary hearing and found them to be based upon mere semantics, incompetent and incredible evidence, misrepresented quotations, unrelated events, and unsworn summaries. Moreover, the court specifically accepted as true trial counsel's testimony as to his knowledge of matters prior to and during trial and regarding his strategic decisions concerning the penalty phase and his investigation and strategy for the sentencing proceedings.
We have found only two areas which need to be discussed: 1) the "script" of the co-defendant's testimony, and 2) whether the prosecutor overstated the facts in arguing that witness' testimony to the jury. Mills claims that the state improperly gave its witness a copy of the *604 typed questions he would be asked and the answers the state expected to receive. As the trial court noted, counsel for both sides prepared their witnesses by going over questions prior to trial. The court also stated that the state asked the witness in question some 150 questions that do not appear in the "script." Our examination does not show that the state put words in this witness' mouth. Even though some of the questions contained answers to those questions, there is no evidence that these answers emanated from any source other than the witness. Defense counsel cross-examined him closely and got him to admit that, prior to trial, he had lied in at least ten instances in responding to his questioners. Counsel put this witness' credibility in issue, and, obviously, the jury found his testimony more credible than Mills'. Mills has not shown that his counsel failed to give him adequate representation.
In arguing to the jury the prosecutor made the following statements regarding the co-defendant's testimony:
I'm not proud of Michael Fredrick, not proud of him at all. I'm not proud of what I was forced to do. Michael Fredrick was a liar. But, you know, he lied terribly, and I mean that in two ways: Number one, he lied a lot. As Mr. Randolph pointed out, he told at least ten different stories. And recall, if you would, the stories that he told.
He said he had gotten the ring from some lady named Corbett. The officers went to get Ms. Corbett and Ms. Corbett comes back and said, "Michael, what are you telling them?"
"No, no, it wasn't Ms. Corbett. I got it from Fawndretta Galimore's car." And they go up and they get Fawndretta Galimore. "No, no, it wasn't Fawndretta Galimore's car."
That is the second meaning of terrible. Michael Fredrick was a stupid liar. He is a bad liar. He can't lie convincingly. He can't do it. He tried for three days and he could never support one of his lies. He could never convince one of the officers. And they just kept asking him questions. And finally, finally, he got painted into a corner, and the only way out of that corner, ladies and gentlemen, was the truth. That's the only way.
* * * * * *
You know, Mr. Randolph got up here and he said, "Now, Mr. Fredrick  " Standing right here. I remember he said, "Mr. Fredrick, you told those officers lies when they arrested you the first time, didn't you?"
Michael Fredrick said, "Yes, I did. I lied. I was scared. I had the terrible consequences of this crime and I lied." Michael Fredrick was a liar then. But let's take a look at his testimony now.
The judge is going to give you an instruction on how you're to accept the testimony of an accomplice. And I ask you to listen very closely to him. He is going to tell you to carefully consider, carefully go over, maybe the word is "scrutinize." But certainly the feeling is there. Look carefully at what an accomplice says. And I think that is the right thing to do. I certainly think it is the right thing to do. Look carefully.
* * * * * *
Look to see if Michael Fredrick's testimony didn't have the ring of truth to it. You know, I think that's one of the things that we need to use common sense on.
* * * * * *
One of the things I'm going to ask you to do and ask you to do it right now, and I'm going to ask you to do it when you get back there, is remember carefully Michael Fredrick's testimony, not just what he said, ladies and gentlemen, but how he said it. Was he sure of himself? I suggest he was.
Was he strong? I suggest he was.
Was he shaken by an hour's worth of cross examination? I suggest he wasn't. And do you know why? Because Michael Fredrick is telling the truth this time.
* * * * * *
You can't tell one lie, you have got to tell 100 lies to cover up for your first lie. And you can't be convincing when you *605 tell a lie because you have got to think of what your next lie is going to be and what your last lie was. How can you be convincing? You can't. There is only one way to be convincing. There is only one way to be strong. There is only one way to be sure. It is to tell the truth. Then you don't have to do anything but remember what happened. You don't have to fabricate, you don't have to plan ahead, you don't have to watch out for the pitfalls behind. You just tell what happened as you remember it. And that's the beauty of truth. And that's the lesson that most children learn early in life, and that is the lesson that Michael Fredrick didn't learn until after his arrest. And I'm afraid it is a lesson that Boone Mills hasn't learned to this day.
Compare Michael Fredrick's testimony right alongside with what Boone Mills tells you. Which one of those two had that ring of truth?
The prosecutor argued forcefully that his witness was more credible than Mills. We do not read his argument, however, as stepping over the border into impermissibly vouching for the truthfulness of his witness' testimony. We hold, therefore, that this argument did not constitute reversible error and counsel was not ineffective for failing to object to it.
Our review shows the trial court's denial of the 3.850 motion to be correct.

Habeas Corpus
In his petition for writ of habeas corpus Mills claims that his appellate attorney, who also represented him at trial, rendered ineffective assistance by not arguing to this Court: 1) that the state tried Mills for being a bad person, a muslim, a white hater, and a criminal rather than for being a murderer; 2) multiple instances of prosecutorial misconduct in arguing to the jury during the guilt phase; and 3) the insufficiency and incredibility of the evidence presented against Mills. Also, acknowledging that this Court considered the issue of the victim's father testifying at trial, Mills asks that we reconsider this point. We found no reversible error on appeal regarding the father's identification of the stolen property, 462 So.2d at 1079-80, and Mills has presented nothing now to convince us otherwise.
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets out the test for ineffective assistance of both trial and appellate counsel. Counsel must be shown to have performed in a substandard manner, and, by that performance, to have prejudiced the outcome. In evaluating counsel's performance courts must try to eliminate the distortions of hindsight and indulge a strong presumption that counsel rendered effective assistance.
After reviewing this record again, we find no merit to the ineffectiveness claims. The first claim, that the state tried Mills for being other than just a killer, concerns remarks made by the prosecutor about Mills and the other witnesses. As Mills notes, his trial attorney objected that the state was trying to prejudice the jury and the trial court admonished the state attorney to stick to the facts. Our review demonstrates that the state did stick to the facts. None of the witnesses were unflawed, but the jury heard all of them and then made its decision. Appellate counsel attacked the refusal to change venue, arguing prejudice, but we cannot declare him ineffective for not raising on appeal the "prejudice" that current counsel has now discovered.
We have also examined the record on the other claims of prosecutorial misconduct. The remarks complained about now are not so egregious as others which this Court has struck down. E.g., Teffeteller v. State, 439 So.2d 840 (Fla. 1983). Trial counsel evidently found them to be within proper argument because he did not object. Failing an objection, the argument Mills makes now would not have been considered on appeal. We cannot fault his appellate counsel's failure, therefore, for not raising the instant complaints. Regarding the sufficiency of the evidence, this Court considered that on its own as it does in all cases appealing a sentence of death. We do not see counsel's not raising this as a *606 separate point on appeal as a serious deficiency. We hold that Mills has not met the first part of the Strickland test, i.e., he has not shown that counsel's performance was substandard.
We affirm the trial court's denial of the 3.850 motion and deny both the petition for writ of habeas corpus and the stay of execution. We also deny a stay pending disposition of a petition for writ of certiorari to the United States Supreme Court.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.
NOTES
[1] Mills withdrew this claim, after filing the motion, as being untrue.
[2] The first issue, that a stay must be granted because the Office of the Capital Collateral Representative (CCR) lacks the money, staff, and time to represent its clients and because the governor arbitrarily signs death warrants, has been raised and rejected before. Troedel v. State, 479 So.2d 736 (Fla. 1985).