684 So.2d 801 (1996)
John MILLS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 89434.
Supreme Court of Florida.
December 4, 1996.
*802 Terri L. Backhus, Chief Assistant CCR; Martin J. McClain, Litigation Director and Gail E. Anderson, Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Richard B. Martell, Chief, Capital Appeals, Tallahassee, for Appellee.
PER CURIAM.
John Mills Jr. appeals an order entered by the trial court below pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
John Mills Jr. was convicted of the first-degree murder of Les Lawhon in Wakulla County, Florida, in 1982. Mills was also convicted of kidnapping, armed burglary of a *803 dwelling, first-degree arson, and grand theft arising out of the same criminal episode.
On March 5, 1982, Mills picked up Michael Fredrick in Mills' truck, and the two set out to burglarize a house. After they spotted Lawhon's trailer, Mills knocked on the door and asked Lawhon to use the telephone. Mills and Fredrick went inside, and Mills held a knife to Lawhon's throat, took a shotgun from the trailer, and forced Lawhon into Mills' truck. Fredrick drove while Mills kept the shotgun aimed at Lawhon. During the trip, Mills made several comments to Lawhon clearly implying that Lawhon would be killed when they reached their destination. They drove to an abandoned airstrip, where Mills tied Lawhon's hands behind his back with a belt and hit him on the head with a tire iron. As Fredrick and Mills were about to leave, Lawhon got up and ran into nearby woods. Mills chased after him and killed him with a shotgun blast at close range. Fredrick and Mills then returned to Lawhon's trailer and took most of the valuable personal property. Before they left, the trailer was set on fire. The shotgun and some of the property stolen from Lawhon were found by police in Mills' mother's house and in a shed behind her house.[1]
Prior to trial, Fredrick pled guilty to second-degree murder and became the State's main trial witness. Mills testified in his own defense that Fredrick borrowed Mills' truck on the day of the murder and returned the truck to Mills full of the stolen goods. Mills testified that Fredrick gave him the goods as repayment of a debt. Mills denied any involvement in the crime and suggested that Fredrick and another person had killed Lawhon.
Mills was convicted of all charges. After the penalty phase, the jury recommended the death penalty by vote of ten to two. The five aggravators found by the trial court were: (1) that the murder was heinous, atrocious, or cruel; and that Mills committed the murder (2) while under sentence of imprisonment; (3) during a kidnapping; (4) for pecuniary gain; (5) in a cold, calculated, and premeditated manner. Finding nothing in mitigation, the trial court followed the jury's recommendation and sentenced Mills to death. Mills' convictions and sentences were affirmed on appeal. Mills v. State, 462 So.2d 1075 (Fla.), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985).
The Governor signed Mills' first death warrant, with execution scheduled for May 7, 1987. Mills then filed a rule 3.850 motion for postconviction relief to vacate his sentences and convictions. After a two-day evidentiary hearing, the trial court denied relief on all claims in the postconviction motion. This Court affirmed the trial court's denial of the 3.850 motion and also denied Mills' petition for writ of habeas corpus. Mills v. State, 507 So.2d 602 (Fla.1987).
Mills next filed a petition for habeas corpus in the United States District Court for the Northern District of Florida. The district court granted a stay of execution on May 6, 1987. The court held a two-day evidentiary hearing on the claim of ineffective assistance of counsel during the guilt phase of the trial and thereafter rejected the claim as meritless.
Over the course of the next several years, Mills filed three separate petitions for writ of habeas corpus in this Court, which were denied. See Mills v. Singletary, 622 So.2d 943 (Fla.1993); Mills v. Dugger, 574 So.2d 63 (Fla.1990); Mills v. Dugger, 523 So.2d 578 (Fla.1988). Recently, the Eleventh Circuit Court of Appeals affirmed the federal district court's denial of Mills' federal petition for writ of habeas corpus. Mills v. Singletary, 63 F.3d 999 (11th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996).[2]
The Governor signed Mills' death warrant on October 30, 1996, with execution scheduled for Wednesday, December 4, 1996. On *804 December 2, 1996, Mills filed this second rule 3.850 motion for postconviction relief with the trial court. After hearing legal arguments on the motions, the trial court summarily denied the claim on the same day, finding the claims in the motion to be procedurally barred.
In this appeal of the trial court's denial, Mills raises four claims. In his first claim, Mills contends that the trial court reversibly erred when it summarily denied relief without attaching those portions of the record conclusively showing that he was entitled to no relief. Fla. R.Crim. P. 3.850(d). In support of this claim, Mills relies upon our decision in Roberts v. State, 678 So.2d 1232, 1236 (Fla.1996), in which we found the failure to attach the pertinent portions of the record to be reversible error. However, Roberts is distinguishable because in that case, the trial court not only failed to attach any portions of the record but also did not give any explanation for the basis of the court's ruling. Id. In this case, the trial court specifically found the issues raised by Mills "procedurally barred as representing matters which were or could have been raised previously for the reasons contained [in] the State's Response." Accordingly, we find no reversible error.[3]
In his next claim, Mills argues that he was denied adversarial testing when critical exculpatory evidence was not presented to the jury at the guilt and sentencing phases of his trial because the State did not reveal all exculpatory evidence in violation of United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Florida Rule of Criminal Procedure 3.220.[4] This claim is based on newly discovered evidence that Mills contends the State should have revealed.[5] In support of his claim, Mills provided affidavits of several witnesses who attest that they saw Fredrick with the victim prior to the murder and that they saw Fredrick and the victim with Debra Mock several times prior to the murder.[6]
We first address the threshold showing required for this Court to reach the merits of this successive petition. Concerning successive motions, rule 3.850(b) provides:
No other motion shall be filed or considered pursuant to this rule if filed more than ... 1 year after the judgment and sentence become final in a capital case in which a death sentence has been imposed unless it alleges that
(1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence....
Thus, in this case, Mills must show in his motion for relief both that this evidence could not have been discovered with the exercise of reasonable diligence and that the motion was *805 filed within one year of the discovery of evidence upon which avoidance of the time limit was based.[7]
We agree with the trial court that this claim is procedurally barred as Mills has failed to meet this threshold requirement. The affidavits upon which Mills relies result from an interview with Tina Partain, who in turn provided the Capital Collateral Representative (CCR) with several other witnesses.[8] However, Tina Partain testified at trial and was available at that time for examination concerning any connection between Fredrick and the victim or between Fredrick and Mock, or concerning any other persons who had connection with either of them. Nor is there sufficient showing that Tina Partain was not available through due diligence during the time required by the rule.[9]
We have carefully reviewed the affidavits submitted by Mills in support of this motion. Essentially this is a successive Brady contention founded upon a failure to disclose information which could have been used to attack Fredrick's credibility. Mills raised a Brady claim with respect to evidence which would have attacked Fredrick's credibility in his initial rule 3.850 motion in 1987. This Court affirmed the denial of that claim in Mills v. State, 507 So.2d 602 (Fla.1987). The federal courts have similarly reviewed and rejected Mills' Brady claim concerning such evidence. See Mills v. Singletary, 63 F.3d 999, 1014-19 (11th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996). Mills has failed to demonstrate that the present claim is not just a variation of his prior Brady claims or that the assertions now made could not have been a part of the prior Brady claims.
Moreover, even absent the procedural bar, we find no basis upon which to reverse the trial court's order. Mills contends that this evidence would have allowed him to contradict Fredrick's testimony that Fredrick did not know Debra Mock or the victim prior to the crime and that Mills gained entrance into Lawhon's trailer under the pretense that he needed to use the phone. The test for determining the effect of the State's failure to disclose exculpatory evidence is whether there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. See United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (Blackmun, J., plurality opinion); id. at 685, 105 S.Ct. at 3385 (White, J., concurring in part and concurring in judgment). In other words, Mills must show the following: (1) that the State possessed evidence favorable to him; (2) that the evidence was suppressed; (3) that he did not possess the favorable evidence, nor could he obtain it with any reasonable diligence; and (4) that had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings *806 would have been different. See Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995).
We find that the affidavits submitted do not meet the aforementioned test. Specifically, we do not find that there exists a reasonable probability that the outcome of the proceedings would have been different. Fredrick's credibility was attacked at the trial and in postconviction proceedings. Fredrick has previously signed conflicting affidavits and given testimony which has been attacked and reviewed. Fredrick now presents another affidavit. However, throughout these proceedings no statements or other evidence have been presented which cause us to conclude that a further proceeding would change the conclusion that Mills committed the murder and that death is the appropriate sentence.
Likewise, we reject Mills' claim that he was denied an adversarial testing when Fredrick lied during his testimony. This claim is procedurally barred as we rejected it in the earlier 3.850 motion, see Mills v. State, 507 So.2d 602 (Fla.1987), and Mills has failed to show that he could not have discovered any new evidence within one year of the filing of this motion. See also Mills v. Singletary, 63 F.3d 999 (11th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996). Even if not procedurally barred, as we have noted, there is nothing in this recent affidavit which bears directly on Mills' participation in the crimes. Thus, we reject this claim.
Last, we address Mills' claim that the Leon County Sheriff's Department has failed to produce documents in accordance with Mills' request pursuant to chapter 119, Florida Statutes (1995). However, the sheriff's department contends that it does not have the requested documents. We find no abuse of discretion in the trial court's failure to order the production of records when there is no demonstration that the records exist.
Finding no merit to Mills' claims, we affirm the trial court's denial of Mills' 3.850 motion.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in result only.
KOGAN, C.J., did not participate.
NO MOTION FOR REHEARING WILL BE ALLOWED.
NOTES
[1] The facts of this case are further detailed in Mills v. State, 462 So.2d 1075 (Fla.), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985), and in Mills v. Singletary, 63 F.3d 999 (11th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996).
[2] The Eleventh Circuit Court of Appeals granted two motions to hold the appeal in abeyance so that Mills could present claims for relief to this Court.
[3] Additionally, we find that this successive motion is governed by rule 3.850(f), which allows a trial court to dismiss a successive petition if it fails to allege new or different grounds and the prior determination was on the merits; or if new and different grounds are alleged, the trial court finds the failure to assert those grounds in a prior motion constituted an abuse of the procedures governed by the rule.
[4] Alternatively, Mills argues that his counsel's failure to discover this information constitutes ineffective assistance of counsel. We reject this contention because it is procedurally barred and because Mills' attorney's failure to discover this evidence does not meet the materiality prong of the standard for determining ineffective assistance of counsel announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The standard for meeting this prong of the Strickland standard is the same as the standard for proving prejudice under Bagley: prejudice is shown only if there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Bagley, 473 U.S. at 682, 105 S.Ct. at 3383 (Blackmun, J., plurality opinion); id. at 685, 105 S.Ct. at 3385 (White, J., concurring in part and concurring in judgment). As we subsequently note in this opinion, Mills fails to meet this standard.
[5] In connection with this argument, Mills contends that the State knowingly presented Fredrick's false testimony in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). We find this claim procedurally barred as well.
[6] Mills argues that there is evidence linking Debra Mock to the murder, as a blue bandana was found at the scene of the murder and Debra Mock was known for wearing a blue bandana.
[7] Effective January 1, 1994, we amended rule 3.850(b) to make that rule consistent with rule 3.851 and reduced the time from two years to one year for filing a motion for collateral relief after a death sentence has been imposed. In Bolender v. State, 658 So.2d 82 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 12, 132 L.Ed.2d 896 (1995), we recognized the one-year limitation in rule 3.850(b) but still allowed the defendant a two-year period within which to file an otherwise time-barred claim under the rule following the date that the evidence could have been discovered. We allowed the defendant in Bolender to receive the benefit of the earlier rule which would have applied as of the date the evidence could have been discovered through the exercise of due diligence. In this case, the amended version of 3.850(b) applies, and Mills had only a one-year period in which to file this claim following the date that he could have discovered this evidence by the exercise of due diligence.
[8] After locating Tina Partain, the investigator from CCR asserts that he located Tanya Lockhart, Marsha Porter, and Bertha Earl, who all provided sworn affidavits for purposes of this motion. The investigator candidly states that he did not begin his search for witnesses in this case until after the Governor signed Mills' death warrant.
[9] The fact that the witness was available and known to the defense distinguishes this case from Swafford v. State, 679 So.2d 736 (Fla.1996), in which we accepted the defendant's claim that an affidavit amounted to newly discovered evidence for purposes of demonstrating that an evidentiary hearing was required. Our acceptance there was based in part on the State's failure to assert anything more than an allegation that the defense had years to find the affiant. Id. at 739.