840 So.2d 962 (2002)
Rickey Bernard ROBERTS, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. SC92496.
Supreme Court of Florida.
December 5, 2002.
Rehearing Denied March 13, 2003.
*965 Martin J. McClain, Special Assistant CCRCSouth, Brooklyn, NY, and Office of the Capital Collateral Regional Counsel for the Southern Region, Fort Lauderdale, FL, for Appellant, Cross-Appellee.
Richard E. Doran, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee, Cross-Appellant.
PER CURIAM.
Rickey Bernard Roberts appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. The State has filed a notice of cross appeal of another order granting postconviction relief. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
Roberts was convicted of first-degree murder, armed sexual battery, and armed kidnaping. The facts of the murder are set forth in Roberts v. State, 510 So.2d 885 (Fla.1987). The jury recommended the death penalty by a vote of seven to five. The judge imposed the death sentence, finding four aggravating circumstances: (1) the defendant had been previously convicted of a violent felony; (2) at the time of the commission of the capital felony the defendant was under a sentence of imprisonment; (3) the capital felony was committed during the commission of a sexual battery; and (4) the capital felony was especially heinous, atrocious, or cruel. The judge found no mitigating circumstances. On appeal, this Court affirmed Roberts' convictions and the sentences imposed, including the death penalty. See id. at 895.
Roberts filed his first motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in 1989, while he was under a pending death warrant. Roberts appealed the trial court's summary denial of his 3.850 motion and also filed a petition for a writ of habeas corpus with this Court. See Roberts v. State, 568 So.2d 1255 (Fla.1990). This Court found the twenty-four issues raised in Roberts' appeal to be either procedurally barred or without merit and affirmed the trial court's summary denial. We also denied Roberts' petition for habeas relief. See id. at 1263.
Roberts also filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Florida, raising twenty-five claims. After an evidentiary hearing and argument by the parties, the district court found the claims either to be procedurally defaulted or without merit and denied habeas relief. See Roberts v. Singletary, 794 F.Supp. *966 1106 (S.D.Fla.1992). The Eleventh Circuit Court of Appeals affirmed the denial of habeas relief. See Roberts v. Singletary, 29 F.3d 1474 (11th Cir.1994).
Roberts filed a second petition for a writ of habeas corpus with this Court in 1993, arguing that he was entitled to a new sentencing proceeding based upon several decisions of the United States Supreme Court relating to jury instructions on the heinous, atrocious, or cruel aggravating circumstance. This Court denied the petition, finding the issue to be procedurally barred because trial counsel had not raised an objection to the form of the instruction. See Roberts v. Singletary, 626 So.2d 168 (Fla.1993).
In 1995, Roberts filed two public records requests, seeking disclosure of records from the State Attorney's Office and the Office of the Attorney General. During the pendency of Roberts' public records requests, the Governor signed a second death warrant against Roberts. Roberts then filed a second 3.850 motion for postconviction relief and a request for a stay of execution. The circuit court denied the postconviction motion without an evidentiary hearing and also denied the stay. This Court issued a temporary stay of execution to permit Roberts to appeal the denial of his motion for postconviction relief to this Court. On appeal, this Court found most of Roberts' claims to be either procedurally barred or without merit. See Roberts v. State, 678 So.2d 1232, 1234-35 (Fla.1996). However, we determined that two issues required remand of Roberts' case to the circuit court for further proceedings. We determined that an evidentiary hearing was required for Roberts' claim that prosecution witness Rhonda Haines had recanted her trial testimony. We also concluded that the circuit court must determine whether the public record deponents should be compelled to answer certain questions certified by Roberts' counsel. See id. at 1235-36.
During the course of this remand, testimony in another death case revealed that Judge Harold Solomon, who presided over Roberts' original trial and postconviction proceedings, had engaged in ex parte communication with the prosecutor and delegated the responsibility for writing the sentencing order to the prosecutor in that case. See State v. Riechmann, 777 So.2d 342 (Fla.2000). After this information came to light and mandate was issued by this Court in Roberts' case, Roberts' counsel filed a motion on October 16, 1996, to disqualify Judge Solomon based in part upon the judge's actions in Riechmann. When the trial court subsequently vacated Riechmann's sentence and ordered a new sentencing proceeding, Roberts' counsel filed an amended motion to disqualify and a motion to depose Judge Solomon. Judge Solomon denied the motion to disqualify as legally insufficient and presided over Roberts' postconviction proceedings. Judge Solomon denied all postconviction relief in an order that was filed with the clerk of the circuit court on October 1, 1997.
On May 5, 1999, this Court issued an order temporarily relinquishing jurisdiction to the Circuit Court of the Eleventh Judicial Circuit to determine the issue raised in Roberts' "Motion to Get the Facts." Roberts alleged that an ex parte proceeding occurred between the State and Judge Solomon during his 1997 postconviction proceedings after remand by this Court. The transcript of a September 1997 status hearing before another judge, at which Roberts was not present and was not represented by counsel, indicated that the State knew that Judge Solomon had denied postconviction relief before the order was filed in the clerk's office and served on the parties.
*967 An evidentiary hearing was held before Judge Jerald Bagley on Roberts' "Motion to Get the Facts." The witnesses at this hearing included the prosecutors from Roberts' trial, appeal, and postconviction proceedings and Judge Solomon, who presided over both the trial and the postconviction proceedings. All of the witnesses denied any ex parte contact during the 1997 postconviction proceedings. Based on the evidence presented at the evidentiary hearing, it appears that Judge Solomon inadvertently sent the State the original copy of the order denying postconviction relief shortly after the order was issued by the judge in September. When the State realized what had happened, the order was filed with the clerk of the court on October 1, 1997, and Roberts received a copy of the order denying postconviction relief.
During the hearing on the "Motion to Get the Facts," Roberts' counsel also questioned Judge Solomon about who had prepared the original sentencing order in Roberts' trial. When the State objected to this questioning, Judge Bagley permitted limited questioning on the topic. Judge Solomon revealed that the State had drafted the sentencing order and the judge had merely signed it and read it in court. At the end of the hearing, Roberts requested leave to file an amended 3.850 motion based on the information disclosed at the hearing. Judge Bagley ruled that this was outside the scope of this Court's remand on the "Motion to Get the Facts."
On a subsequent motion from Roberts, this Court again relinquished jurisdiction so that the circuit court could consider Roberts' third motion for postconviction relief. The motion raised two claims relating to Judge Solomon: (1) the sentencing judge erred in failing to independently weigh the aggravating and mitigating circumstances and in failing to disclose that the State had prepared the judge's findings in support of the death sentence; and (2) Roberts was denied due process when Judge Solomon presided over his 1997 postconviction proceedings because the judge knew material information that he did not disclose.
During an evidentiary hearing on this third postconviction motion before Judge Bagley, the court heard testimony from Roberts' trial counsel and postconviction counsel, Judge Solomon, and the prosecutors. Judge Solomon again testified that the State drafted the findings in support of Roberts' death penalty, which was the same procedure he had employed in Riechmann. The prosecutors testified that they did not recall drafting the sentencing order in Roberts' case. However, the circuit court granted Roberts a new sentencing proceeding in light of Judge Solomon's uncontradicted and unequivocal testimony that he had asked someone from the State to prepare the order and had not prepared the order himself.
Roberts appeals five issues related to the denial of his second postconviction motion by Judge Solomon following the evidentiary hearing ordered by this Court. Roberts argues that (1) Judge Solomon should have granted the motion to disqualify him from presiding over the postconviction proceedings; (2) the court erred in refusing to issue a certificate of materiality so that Roberts could obtain an out-ofstate subpoena requiring Rhonda Haines to appear as a witness at the evidentiary hearing; (3) Judge Solomon was assigned to the postconviction proceedings during an ex parte proceeding; (4) the court erred in denying Roberts' motion to disqualify Assistant State Attorney William Howell; and (5) the court erred in failing to conduct a cumulative analysis of the claims in this 3.850 motion and Roberts' prior 3.850 claims. The State filed a crossappeal of Judge Bagley's order in the third *968 postconviction motion, which granted Roberts a new sentencing proceeding.
In his first issue, Roberts argues that Judge Solomon should have granted the motion to disqualify the judge from presiding over the postconviction proceedings. Florida Rule of Judicial Administration 2.160(d) states, in part, that "[a] motion to disqualify shall show ... that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge" or that the "judge is a material witness for or against one of the parties to the cause." Rule 2.160(f) provides that the judge against whom an initial motion to disqualify is directed "shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged." The motion is legally sufficient if the facts alleged demonstrate that the moving party has a well-grounded fear that he or she will not receive a fair trial at the hands of the judge. See Correll v. State, 698 So.2d 522, 524 (Fla.1997); Cave v. State, 660 So.2d 705, 708 (Fla.1995). To determine if a motion to disqualify is legally sufficient, this Court looks to see whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial. See Correll, 698 So.2d at 524.
In the instant case, Roberts' motion to disqualify alleged that Judge Solomon had served as a witness for the State in the Riechmann case, engaged in ex parte communications with the State to discuss Riechmann's claims, and had developed a relationship with the prosecutor in Riechmann's case, who also prosecuted Roberts' case, and that these facts caused Roberts to fear that he would not receive a fair hearing from the judge. Roberts' motion to depose noted Judge Solomon's behavior in Riechmann[1] and sought to inquire whether the judge had engaged in similar conduct in Roberts' case. Roberts' amended motion to disqualify Judge Solomon, which was filed simultaneously with the motion to depose the judge, also outlined the judge's misconduct in the Riechmann case, but elaborated by referring to the evidence revealed at Riechmann's evidentiary hearing. The amended motion further noted that Riechmann had been granted a new sentencing hearing based on Judge Solomon's misconduct and that this relief had been granted to Riechmann after Roberts filed his first motion to disqualify.
At the hearing on these motions, Roberts' counsel argued that Judge Solomon needed to disqualify himself and permit Roberts to depose him to learn whether the judge had engaged in the same conduct as in Riechmann. Counsel noted that Judge Solomon could not be both the presiding judge and a witness at the postconviction hearing. Judge Solomon found Roberts' motion to disqualify to be legally insufficient and denied the motion to depose. This was clearly error as Judge Solomon knew that he had engaged in ex parte communication in Roberts' case, had asked the State to draft Roberts' sentencing order, and had failed to independently weigh the aggravating and mitigating factors in the case. Thus, Roberts' motion to disqualify was legally sufficient and Judge *969 Solomon should have granted the motion and allowed his deposition to proceed.
The State contends that Roberts' motion to disqualify, which was filed on October 16, 1996, and amended on November 12, 1996, was not timely. Florida Rule of Judicial Administration 2.160(e) provides that a motion to disqualify must be made "within a reasonable time not to exceed 10 days after discovery of the facts constituting grounds for the motion and shall be promptly presented to the court for an immediate ruling." The State raised the issue of timeliness of the motion below, but Judge Solomon did not deny the motion on this basis. Instead, the judge ruled that "the Defendant's motion to disqualify judge is insufficient, and the motion is denied." Thus, the timeliness of the motion is not properly before us. Nevertheless, we find that Roberts' motion to disqualify was timely filed, based on the circumstances of this case.
Finally, the State argues that even if the motion was timely and legally sufficient, Roberts is not entitled to relief on this claim because he has been granted a new sentencing proceeding based on his third postconviction motion. The State relies upon this Court's decision in State v. Mills, 788 So.2d 249, 250-51 (Fla.2001), in which we ruled that a claim of impermissible ex parte communications between the State and the sentencing judge regarding preparation of an order during an initial postconviction proceeding was rendered moot by the postconviction court's decision to grant the defendant a new sentencing hearing. However, we find Mills to be factually distinguishable from the instant case. In Mills, we specifically noted that the evidence presented at the postconviction hearing did not call into question Mills' conviction for first-degree murder, and thus he was not entitled to a new trial on the question of guilt. See id. at 251. In the instant case, Judge Solomon presided over an evidentiary hearing ordered by this Court to hear the testimony of a recanting witness and determine whether the recantation warranted a new guilt phase trial.
Canon 3B(7) of the Code of Judicial Conduct provides that "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." Based on this principle, this Court has repeatedly stated that there is nothing "more dangerous and destructive of the impartiality of the judiciary than a one-sided communication between a judge and a single litigant." State v. Riechmann, 777 So.2d 342, 351 (Fla.2000). Further, as we explained in Rose v. State, 601 So.2d 1181, 1183 (Fla. 1992), we are not "concerned with whether an ex parte communication actually prejudices one party at the expense of the other. The most insidious result of ex parte communications is their effect on the appearance of the impartiality of the tribunal. The impartiality of the trial judge must be beyond question." Id.
Here, Roberts' second postconviction motion, which raised guilt phase issues, was ruled upon by a judge who had engaged in ex parte communication with the State during the penalty phase proceedings and who abdicated his judicial role of independently weighing the aggravating and mitigating circumstances to determine if a death sentence was appropriate. To avoid the appearance of impropriety and to give Roberts a fair hearing of his claims, we conclude that he should be given a new hearing before a new judge on his remanded second postconviction motion.
While our disposition of this issue renders Roberts' remaining issues on appeal *970 moot, we address them to offer guidance to the trial court in the new proceeding on remand. We find no merit to issues three (judge was assigned to the case during an ex parte proceeding) and four (denial of motion to disqualify the state attorney). The record shows that the instances where the State appeared before the administrative judge without Roberts being present involved "strictly administrative matters not dealing in any way with the merits of the case." Rose, 601 So.2d at 1183. Further, we remanded the case back to Judge Solomon for an evidentiary hearing on the recanted testimony of a trial witness and for rulings on the questions certified by Roberts' counsel in the public records depositions. Thus, the case was remanded to Judge Solomon to conclude what was unfinished in Roberts' second postconviction proceeding, and Judge Solomon was the proper party to rule upon the motion to disqualify him from presiding.
We also find no merit to Roberts' claim that the assistant state attorney should have been disqualified from serving as both prosecutor and witness at the second postconviction hearing. "While Rule Regulating the Florida Bar 4-3.7 prohibits a lawyer from acting as an advocate and witness in the same trial, [the] purpose of the rule is to prevent the evils that arise when a lawyer dons the hats of both an advocate and witness for his or her own client. Such a dual role can prejudice the opposing side or create a conflict of interest." Scott v. State, 717 So.2d 908, 910 (Fla.1998) (footnotes omitted). The concerns behind the rule are not implicated here as Assistant State Attorney William Howell was called as a rebuttal witness by Roberts in a postconviction evidentiary hearing before the judge. See id.
However, we are troubled by the trial court's refusal to issue a certificate of materiality so that Roberts could obtain an out-of-state subpoena requiring Rhonda Haines to appear as a witness at the evidentiary hearing. This Court specifically remanded this case to the trial court for an evidentiary hearing to permit Haines to testify regarding the affidavit in which she recanted her trial testimony. See Roberts, 678 So.2d at 1235, 1236. At the time of the evidentiary hearing, Haines resided in California. Roberts repeatedly asked the trial court to issue a certificate of materiality so that a subpoena could be obtained to compel Haines' appearance at the evidentiary hearing. The State objected, arguing that section 942.03(1), Florida Statutes (1997), which governs out-of-state subpoenas, is only applicable in criminal prosecutions or grand jury proceedings, and postconviction proceedings do not qualify as criminal prosecutions under the statute. Roberts acknowledged that the statute does not specify postconviction proceedings as the basis for a court to issue a certificate of materiality to compel the attendance of an out-of-state witness, but he argued that postconviction proceedings must comport with due process, that if the court denied the certificate of materiality he would be denied a full and fair postconviction hearing, and that he should not have to rely on the witness's willingness to appear voluntarily without a subpoena. Judge Solomon denied Roberts' application for the issuance of a certificate of materiality for Haines. When the evidentiary hearing was finally conducted in July 1997, Haines did not attend. The State argued that Roberts was responsible for Haines' nonappearance because Roberts' counsel had warned Haines that the State intended to prosecute her for perjury. The State did acknowledge that it intended to charge Haines with perjury if she testified in conformity with her affidavit recanting her trial testimony. The hearing proceeded *971 without Haines, and in lieu of her live testimony, Roberts proffered Haines' affidavit.
In her affidavit, Haines claimed that the State pressured her into her trial testimony and promised to help her with pending charges in exchange for her testimony. In rebuttal of Haines' affidavit, a detective testified that pending charges against Haines had not been taken care of by the prosecutor, and the three prosecutors testified that they did not pressure or bribe Haines for her trial testimony and that they never assisted her on any pending charges. Following this hearing, Judge Solomon denied relief on the recanted testimony claim. The judge found that the claim could have been presented in the first postconviction proceedings in 1989 through the use of due diligence; that the recantation evidence was not reliable because Roberts did not present the recanting witness, corroborating witnesses, or other evidence to establish the trustworthiness of the recantation and the State presented both testimony and evidence to refute the recanting witness's statements; and that there was no reasonable probability that the outcome of the trial would have been different even if the recantation were taken as truthful and had been presented at trial.
Roberts argues that he was denied a full and fair evidentiary hearing on this claim by the court's refusal to issue a certificate of materiality in order to compel Haines' appearance at the hearing. The State asserts that postconviction proceedings are civil and thus not covered by section 942.03(1), which only specifies that a material witness in another state may be summoned in a pending prosecution or grand jury investigation. However, as this Court explained in State ex rel. Butterworth v. Kenny, 714 So.2d 404, 409-10 (Fla.1998), while habeas corpus and other postconviction proceedings are technically classified as civil proceedings, they are "[u]nlike a general civil action ... wherein parties seek to remedy a private wrong [because] a habeas corpus or other postconviction relief proceeding is used to challenge the validity of a conviction and sentence. Consequently, postconviction relief proceedings, while technically classified as civil actions, are actually quasi-criminal in nature because they are heard and disposed of by courts with criminal jurisdiction." (Citations omitted.) Thus, while criminal postconviction proceedings may be designated civil, "they involve interests and considerations that are more closely aligned with those traditionally and fundamentally protected in criminal proceedings." Miami-Dade County v. Jones, 793 So.2d 902, 905 (Fla.2001).
Furthermore, this Court has recognized that postconviction proceedings must comport with due process. See, e.g., Teffeteller v. Dugger, 676 So.2d 369, 371 (Fla.1996) (finding that postconviction hearing was procedurally flawed and violated the appellants' right to due process where court excluded the appellants from the courtroom while much of the evidence was presented and prevented appellants' counsel from cross-examining many of the witnesses). In Johnson v. Singletary, 647 So.2d 106 (Fla.1994), and Provenzano v. State, 750 So.2d 597 (Fla.1999), we determined that the postconviction defendants had been deprived of due process because they were not given an opportunity to present evidence or witnesses.[2] Furthermore, *972 as in Provenzano, "the purpose of our previous remand was never realized" in Roberts' case because the court never heard from Roberts' recanting witness even though he repeatedly requested a means to compel her attendance. 750 So.2d at 597.
Thus, on remand, Roberts must be afforded an opportunity to compel Haines' testimony at the evidentiary hearing so that the court can hear from her directly about the recantation and the circumstances surrounding her original trial testimony.
Finally, we agree with Roberts that our case law requires cumulative analysis of newly discovered evidence. In determining whether newly discovered evidence warrants setting aside a conviction, a trial court is required to consider all newly discovered evidence which would be admissible at trial and then evaluate the weight of both the newly discovered evidence and the evidence which was introduced at trial to determine whether the evidence would probably produce a different result on retrial. See Lightbourne v. State, 742 So.2d 238, 247 (Fla.1999); Jones v. State, 709 So.2d 512, 521 (Fla.1998). This cumulative analysis must be conducted so that the trial court has a "total picture" of the case. Lightbourne, 742 So.2d at 247. However, claims of cumulative error are properly denied where individual claims have been found without merit or procedurally barred. See Rose v. State, 774 So.2d 629, 637 (Fla.2000); Downs v. State, 740 So.2d 506, 509 n. 5 (Fla.1999).
Roberts raised a number of alleged violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in the appeal of his first postconviction motion. See Roberts v. State, 568 So.2d 1255, 1260 (Fla.1990).[3] We concluded that one allegation did not constitute a Brady violation because the alleged exculpatory evidence (witness statements that Roberts had been drinking and taking drugs prior to the offense) was equally accessible to the defense and the prosecution. See Roberts, 568 So.2d at 1260. As to the seven other alleged instances of undisclosed exculpatory evidence, we concluded there was no reasonable probability that the result of the trial would have been different had the evidence been disclosed. See id. However, if the trial court determines on remand that Haines' testimony is credible, then the Brady claims raised in Roberts' first postconviction motion must be considered in a cumulative analysis. At this time, no relief is warranted on this claim.
Turning to the State's cross-appeal, the State argues that the trial court erred in granting relief on Roberts' third postconviction motion. Judge Bagley presided over the evidentiary hearing regarding Judge Solomon's conduct in Roberts' trial. After the hearing, Judge Bagley issued an order granting Roberts a new sentencing proceeding. The order states that Roberts' claim of ex parte communication between the sentencing judge and the State and improper drafting of the sentencing "is overwhelmingly supported by the post conviction testimony of Judge Harold Solomon, along with other evidence presented at the evidentiary hearing."
The transcript of the hearing below supports the lower court's findings. Judge Solomon testified at both this hearing *973 and the April 2000 hearing on the "Motion to Get the Facts" that he asked the State to draft the sentencing order for Roberts and that this was his practice in all three death penalty cases over which he presided.[4] Judge Solomon did not recall whom he had spoken to, but remembered that he did not draft the order himself. Two prosecutors testified that they did not draft the order and possessed no recollection of the judge making such a request of the State; one prosecutor testified that he could not recall. Thus, the evidence is contradictory and turns on the lower court's assessment of the credibility of the evidence. Findings on the credibility of evidence by a lower court are not overturned if supported by competent, substantial evidence. See Jones v. State, 709 So.2d 512, 515 (Fla.1998) ("[T]his Court, as an appellate body, has no authority to substitute its view of the facts for that of the trial judge when competent evidence exists to support the trial judge's conclusion."). In this case, the lower court's ruling is so supported and thus should be affirmed.
The State argues that Roberts has not shown due diligence in pursuing this claim and should have been on notice about the authorship of the sentencing order by an unsigned, unpaged sentencing order that was included as an exhibit to a public records deposition of one of the prosecutors. The State made this same argument to the trial court after the hearing on the third postconviction motion, but never presented this argument or evidence during the evidentiary hearing on the issue. The lower court found no merit to this due diligence claim. We agree.
The State never presented or mentioned the unsigned order at the hearing. In fact, the State's position at the hearing was that Judge Solomon was mistaken and the State did not draft the order. The prosecutors even testified that there was no draft order in the state attorney's records or files, so Judge Solomon had to be mistaken in his recollection. When Roberts' counsel asked a State witness if there was anything in the records that should have alerted Roberts to the State's authorship of the sentencing order, the State objected to the relevance of the question and the court sustained the objection. Thus, we find this claim to be inconsistent with the State's position below and deem it abandoned.
For the reasons discussed above, we vacate the order denying relief on Roberts' second postconviction motion and remand for a new evidentiary hearing before a new judge. We affirm the order on the third postconviction motion granting Roberts a new sentencing proceeding based on ex parte communication by the sentencing judge and the improper drafting of the sentencing order. For purposes of judicial economy, the evidentiary hearing on the postconviction motion should be conducted first to determine whether a new guilt phase proceeding is also warranted.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
NOTES
[1] Judge Solomon engaged in ex parte communication in which he asked the State to draft Riechmann's sentencing order. Moreover, the judge abdicated his responsibility to independently weigh the aggravating and mitigating circumstances, did not articulate any specific findings as to the circumstances, and merely read from the State's prepared order. This misconduct was not disclosed to defense counsel during any stage of the penalty phase, but only came to light in public record materials disclosed by the State. See Riechmann, 777 So.2d at 351-52.
[2] In Johnson, the defendant was prevented from presenting evidence to corroborate his affidavits, while the State was permitted to present evidence regarding the unreliability of the affidavit evidence. 647 So.2d at 111 n. 3. In Provenzano, the defendant was prevented from presenting expert testimony as to his incompetency to be executed, while the State expert with a conflicting opinion did testify. 750 So.2d at 601.
[3] Roberts also raised a number of Brady claims in his federal habeas petition, but the district court concluded that "all of the alleged `exculpatory information' was either immaterial, or already in [Roberts'] possession." Roberts v. Singletary, 794 F.Supp. 1106, 1122 (S.D.Fla.1992). Thus, the federal district court denied these claims as meritless. See id.
[4] Judge Solomon presided over the capital case trials of Roberts, Dieter Riechmann, and Krishna Maharaj. Riechmann and Maharaj have been granted relief based on Judge Solomon's ex parte communications with the State and failure to conduct an independent review of the aggravating and mitigating factors by merely adopting the State's sentencing order. See Maharaj v. State, 778 So.2d 944, 947 (Fla.2000); State v. Riechmann, 777 So.2d 342, 351 (Fla.2000).