PER CURIAM.
Rickey Roberts appeals a trial court order denying his second motion for postcon-viction relief following an evidentiary hearing.[1] The issue is whether the trial court erred in denying Roberts’ claim that the State’s failure to disclose favorable information to the defense requires reversal of his conviction. For the reasons that follow, we affirm the trial court’s order.
FACTS AND PROCEDURAL HISTORY
In 1985, Roberts was convicted of the first-degree murder of George Ñapóles and the armed sexual battery and armed kidnapping of Michelle Rimondi. The relevant facts were summarized by this Court on direct appeal. See Roberts v. State, 510 So.2d 885, 887 (Fla.1987). The lengthy procedural history was summarized in our most recent decision in this case. See Roberts v. State, 840 So.2d 962, 965-68 (Fla.2002).
Suffice it to say that State witness Rhonda Haines, who was Roberts’ girlfriend at the time of the killing, originally testified at Roberts’ trial that he confessed to her that he committed the murder. See Roberts v. State, 678 So.2d 1282, 1235 (Fla. 1996). Years later, in 1996, a defense investigator located and interviewed Haines in California concerning Roberts’ postcon-viction proceedings. Following the interview, Haines signed an affidavit recanting her trial testimony. In her affidavit, Haines claimed that the State pressured her into her trial testimony and promised to help her with pending prostitution charges in exchange for her testimony. See id.
Roberts appended Haines’ affidavit to his second postconviction motion, arguing that Haines’ recantation constituted newly discovered evidence that established he was erroneously convicted. The trial court summarily denied Roberts’ claim. On appeal, we vacated the trial court’s summary denial of Roberts’ motion and remanded for an evidentiary hearing. Id. However, on remand, the trial court again denied Roberts’ motion after it refused to issue a certificate of materiality so that Roberts could obtain an out-of-state subpoena requiring Haines to appear as a witness at the evidentiary hearing. See Roberts, 840 So.2d at 970. On appeal after remand, we again remanded for an evidentiary hearing, stating that “on remand, Roberts must be afforded an opportunity to compel Haines’ testimony at the evidentiary hearing so that the court can hear from her *188 directly about the recantation and the circumstances surrounding her original trial testimony.” See id. at 972. We further directed that ‘⅛/the trial court determines on remand that Haines’ testimony is credible,” it must conduct a cumulative analysis, considering the effect of the newly discovered evidence revealed in Haines’ recantation along with the alleged Brady[2] violations raised in Roberts’ first postconviction motion. See 840 So.2d at 970 (emphasis added).
Pursuant to this Court’s 2002 remand, the trial court conducted an evidentiary hearing during which Rhonda Haines (now Rhonda Williams) testified via satellite from California. The court also heard the testimony of former prosecutor Sam Rabin, defense investigator Jeff Walsh, and others. Following the hearing, the parties submitted written closing arguments/post-hearing memoranda. Roberts raised two new issues in his post-hearing memorandum: (1) the State failed to disclose two of Haines’ prostitution arrests and her alias, Shannon Harvey; and (2) the State failed to disclose information that State witness Michelle Rimondi made telephone calls to Sam Rabin demanding money and that Rabin threatened to take action against her if she failed to maintain contact with the State or her father regarding Roberts’ trial.
On September 2, 2005, the trial court entered a thorough and well-reasoned order denying Roberts’ second postconviction motion. The trial court determined that Rhonda Haines’ testimony was not credible and, therefore, concluded that a cumulative analysis of Roberts’ Brady claims was not necessary. The trial court also addressed and denied relief as to the two Brady claims Roberts raised in his post-hearing memorandum. These Brady claims are the focus of Roberts’ present appeal.[3]
DISCUSSION
In this appeal, Roberts does not quarrel with the trial court’s determination that Rhonda Haines’ testimony at the eviden-tiary hearing was not credible. Rather, he argues that he is entitled to a new trial under Brady because the State failed to disclose Haines’ alias and two prostitution arrests, Michelle Rimondi’s requests for money, and Sam Rabin’s supposed threat to take action against Rimondi if she did not keep in touch with the State or her father regarding Roberts’ trial. Roberts also claims that the trial court erred in refusing to consider this previously undisclosed evidence in a cumulative analysis with the Brady claims raised in his first postconviction motion. We disagree and affirm the trial court’s denial of Roberts’ second posteonviction motion.
Although not challenged by Roberts, we note at the outset that the trial court found Haines’ testimony at the evi-dentiary hearing not credible. As the trial court explained:
After evaluating the demeanor and credibility of Rhonda Haines, albeit by satellite, along with examining all of the circumstances in this case, the Court is left with the inescapable conclusion that Haines’ affidavit was primed by Roberts’ investigator and her testimony offered at the evidentiary hearing was neither credible nor reliable. Moreover, the Court finds that Sam Rabin was irrefut *189 ably a more credible witness. He contradicted Haines’ testimony.
Furthermore, the Court finds that the many different and inconsistent statements that Haines provided in this case, including her testimony at the evidentia-ry hearing, illustrate why her recanted testimony is unreliable and not worthy of belief. As to her affidavit that was prepared by Mr. Walsh, the Court can not accept Haines’ (Williams’) recantation, purportedly attested to under oath, when the Court lacks confidence in Haines’ ability to appreciate or recognize the meaning of an oath to tell the truth. Additionally, Haines’ recantation, a decade after Roberts’ conviction and sentences, is further clouded by her strong suspicion that Roberts is the father of her son who was born shortly after the trial. Thus, her recanted testimony provides a strong motive for her to lie in order to help Roberts. Therefore, the Court concludes that Roberts has failed to establish that confidence in the outcome of the guilt phase of his trial has been undermined, and that he has been denied a fair trial.
As to Roberts’ assertion that this Court must apply the cumulative analysis of newly discovered evidence to a number of alleged Brady violations asserted by Roberts, the Court finds that the Brady claims raised in Roberts’ first post conviction motion need not be considered in a cumulative analysis since Haines’ recanted testimony has been deemed not credible by this Court.
The trial court’s credibility determination is supported by competent, substantial evidence in the record. We affirm that finding. See Melendez v. State, 718 So.2d 746, 747-48 (Fla.1998); Blanco v. State, 702 So.2d 1250, 1251 (Fla.1997) (“As long as the trial court’s findings are supported by competent substantial evidence, ‘this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court).’” (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla.1984)).
We also affirm the trial court’s denial of Roberts’ Brady claims based on Haines’ alias and Dade County prostitution arrests and Rimondi’s interaction with Rabin. In rejecting these claims, the trial court reasoned:
It is well settled that the prosecution must disclose evidence favorable to the accused if evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To establish such a claim, the defendant must show: (1) that the State possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence, nor could he obtain it with any reasonable diligence; (3) that the prosecution suppressed the evidence; and (4) that had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different. Mills v. State, 684 So.2d 801 (Fla.1996); Scott v. State, 657 So.2d 1129 (Fla.1995); Hildwin v. Dugger, 654 So.2d 107 (Fla.1995); Mendyk v. Dugger, 592 So.2d 1076 (Fla. 1992); Routly v. State, 590 So.2d 397 (Fla.1991); Lightboume v. State, 644 So.2d 54 (Fla.1994). The Supreme Court defined “reasonable probability” in White v. State, 664 So.2d 242, 244 (Fla.1995) as a “probability sufficient to undermine confidence in the outcome.”
Applying these principles, the court finds no Brady violation. Thus, the Court does not find that there is a reasonable probability that had the foregoing evidence been disclosed to the defense, the result of the proceeding would have been different. Kyles *190 v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Even assuming that the State had in its possession information as to Haines’ prostitution arrests under the name of Shannon Harvey as well as the disposition of a February 22, 1984 prostitution arrest, the trial record shows that Roberts vigorously assailed Haines’ character and arrest record....
Moreover, the Court finds that trial counsel should and could have obtained Haines’ alleged alias, Shannon Harvey, by merely asking during her deposition whether she ever used an alias or by moving to compel the State to produce all aliases of its witnesses since it is commonly known by law enforcement officers, prosecutors and defense attorneys that prostitutes generally use aliases. Based on the foregoing, the Court does not find that this evidence would have impeached the testimony of Haines nor would it have resulted in a markedly weaker case for the prosecution and a markedly stronger one for Roberts.
Similarly, as to Roberts’ claim that the State failed to disclose Michelle Ri-mondi’s request for money and its supposed threat to take action against her if she did not stay in contact with the State or her father, the Court finds that Roberts has not shown that Rimondi received any money or other benefit in exchange for her testimony. Sam Rabin testified that Rimondi received no money or other benefit for her testimony since she was an eyewitness and victim. He further explained that the State Attorney’s office had a policy that directly prohibited prosecutors from engaging in doling out money or other benefits that would compromise either Rimondi’s testimony or that of any potential witness in the prosecution of criminal cases. Thus, the evidence — a message note from Rimondi requesting money and a letter addressed to Rimondi’s father advising him that his daughter must stay in contact with him or the State — is totally speculative at best and does not support the existence of a Brady violation.
Again, we affirm the trial court’s conclusion that Roberts has failed to demonstrate a Brady violation as to these claims.
Finally, the trial court properly declined to conduct a cumulative analysis of Haines’ recantation together with Roberts’ Brady claims. As we stated in our 2002 opinion, the need for a cumulative analysis was contingent upon the trial court’s finding Haines credible. See Roberts, 840 So.2d at 972. Because the trial court did not find Haines’ testimony credible, it was not required to conduct a cumulative analysis. Further, because the Brady claims raised in Roberts’ post-hearing memoran-da are individually meritless, the trial court properly declined to consider them in a cumulative analysis. See Roberts, 840 So.2d at 972 (“[Cjlaims of cumulative error are properly denied where individual claims have been found without merit.”).
CONCLUSION
Based on the foregoing, we affirm the trial court’s denial of Roberts’ second motion for postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.

. We previously affirmed the trial court's order vacating Roberts’ death sentence and granting a new sentencing proceeding, see Roberts v. State, 840 So.2d 962, 967 (Fla. 2002), but remanded to afford Roberts an opportunity to compel the testimony of Rhonda Haines, a State witness who recanted her trial testimony by affidavit. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. The trial court also rejected Roberts’ claim that the State presented false or misleading evidence at trial in violation of Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Roberts does not raise this claim on appeal.